NUMBER 13-02-565-CR

COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




 
THOMAS CLAY,                                                                          Appellant,

v.

THE STATE OF TEXAS,                                                             Appellee.




On appeal from the 105th District Court
of Nueces County, Texas.




MEMORANDUM OPINION

Before Justices Hinojosa, Yañez, and Castillo

Memorandum Opinion by Justice Castillo

 
         A jury convicted appellant Thomas Clay of knowingly engaging in deadly
conduct.


 It sentenced him as an habitual offender to confinement for thirty-five years
in the Institutional Division of the Texas Department of Criminal Justice.


 By two
issues, Clay complains that: (1) charging the jury on deadly conduct was not
authorized as a lesser-included offense of aggravated assault with a deadly weapon,
the offense for which Clay was indicted; and (2) the evidence is factually insufficient
to sustain his conviction. We affirm. 
I. PROCEDURAL BACKGROUND
         The State's first prosecution of Clay ended in a deadlocked jury and mistrial. 
A second jury trial began September 10, 2002. The trial court pronounced sentence
on September 12, 2002, and Clay filed his timely notice of appeal on October 9. The
parties completed their appellate briefing by June 19, 2003. On August 28, 2003,
this Court abated the case for preparation of the trial court's certification of Clay's
right of appeal. See Tex. R. App. P. 25.2. We received a supplemental clerk's record
containing the trial court's certification on February 3, 2004. 

II. RELEVANT FACTS
         This is a memorandum opinion not designated for publication. The parties are
familiar with the facts. We will not recite them here except as necessary to advise the
parties of our decision and the basic reasons for it. See Tex. R. App. P. 47.4. 
         On October 28, 2001, John Henderson and a companion were driving in
Henderson's car in a neighborhood in Corpus Christi, Texas. Clay was driving around
the same neighborhood at the same time. Henderson and Clay exchanged hostile
looks, then words. "I just got out and I asked Mr. Clay what was the problem, why
was he following me," Henderson told the jury. "He said, 'Man, the way I feel, you
got to get out of my face,'" Henderson testified. "I said, 'Well, if you have a problem
with me, take it up with me. Don't just be following behind me,' so I got back in my
car." Henderson turned his car around. Clay also turned around and continued to
follow. Henderson stopped again, got out of his car, and confronted Clay, who also
was stopped in his car. "I asked Mr. Clay, I said, 'What is the problem, man?' And
before I know it, I looked right above his shoulder and then that's when I seen the
gun." Henderson told the jury that Clay fired at him several times, hitting him twice,
once in his right arm and a second shot to his right thigh. 
         An eyewitness testified he heard gunfire, then saw what he believed could have
been a pistol in Henderson's hand. He did not see who fired the shots he heard. He
watched Henderson walk back to his car. "I didn't see him limping or nothing like
that," he told the jury. 
         A second eyewitness testified Henderson started the confrontation. After
Henderson and Clay exchanged words, the second witness told the jury, he saw
Henderson jump out of his car with what appeared to be a handgun in his hand. 
Henderson confronted Clay in his car, the witness told the jury, and angrily demanded,
"What the [expletive] are you looking at? Don't be looking at me." Both vehicles
drove off, but stopped again. Henderson popped the trunk and jumped out of his car. 
"He got a weapon, a bigger handgun," out of the trunk, the witness told the jury. 
Henderson started shouting, "'You want to play pistol play with me?' You want to
play?'" 
         Henderson then ran up to Clay's car, the witness testified. "I didn't see [Clay]
necessarily shoot him," he told the jury. "I heard shots. Then I seen [Henderson]
flinching and he ran into a parking lot, okay? Then [Clay] sped off down the street,
and then after that after the shots that I heard, I heard another shot when I seen Mr.
Henderson take a gun, the gun that he had ran up on [sic] with and kneeled over in the
parking lot and shot it into the ground or whatever." Henderson had shot himself, the
witness testified. "It appeared to me he had shot himself in the forearm or the leg. 
Well, the way he kneeled down, he kneeled down, he went into the driveway. He had
the gun, and he was kneeling down and shot it like this." 
         An investigation at the scene did not reveal any spent rounds or shell casings. 
No weapons were found in Henderson's car or on his person. 

III. JURY-CHARGE ANALYSIS
         The trial court charged the jury on the felony offenses of aggravated assault
with a deadly weapon and knowing deadly conduct and the Class A misdemeanor
offense of reckless deadly conduct. Clay asserts in his first issue on appeal
that the trial court erroneously included in the charge both felony and misdemeanor
deadly conduct as lesser-included offenses of aggravated assault. The State responds
that Clay invited any error in the charge. However, our first duty in analyzing
a jury-charge issue is to determine whether error exists. Middleton v. State,
125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (citing Hutch v. State,
922 S.W.2d 166, 170-71 (Tex. Crim. App. 1996)). Then, if we find error, we analyze
that error for harm. Middleton, 125 S.W.3d at 453. Preservation of charge error does
not become an issue until we assess harm. Id. The degree of harm necessary
for reversal depends on whether the appellant preserved the error. Id. (quoting
Hutch, 922 S.W.2d at 171); see Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1984) (op. on reh'g). Thus, we review alleged charge error by
answering two questions: (1) whether error existed in the charge; and (2) whether
sufficient harm resulted from the error to compel reversal. See Posey v. State,
966 S.W.2d 57, 60 & n.5 (Tex. Crim. App. 1998). We turn to the question of error.
 A. Is There Error in the Charge?
         A trial court has no jurisdiction to convict an accused of an offense not charged
in the indictment. Foster v. State, 834 S.W.2d 494, 497 (Tex. App.–Houston [14th
Dist.] 1992, no writ) (citing Houston v. State, 556 S.W.2d 345, 347 (Tex. Crim.
App. 1977)). An exception to this rule is that a trial court may convict an accused of
an offense not charged in the indictment if it is a lesser-included offense of the one
charged. Foster, 834 S.W.2d at 497. Article 37.08 of the code of criminal procedure
codifies the common-law exception regarding lesser-included offenses. Tex. Code
Crim. Proc. Ann. art. 37.08 (Vernon 1981). In a prosecution for an offense with
lesser-included offenses, the jury may find the accused not guilty of the greater
offense but guilty of any lesser-included offense. Id. Article 37.09 provides the test
for determining whether an offense is a lesser-included offense pursuant to
article 37.08. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981). Article 37.09
lists four types of lesser-included offenses: 
(1)it is established by proof of the same or less than all the facts
required to establish the commission of the offense charged;
 
(2)it differs from the offense charged only in the respect that a less
serious injury or risk of injury to the same person, property, or public
interest suffices to establish its commission;
 
(3)it differs from the offense charged only in the respect that a less
culpable mental state suffices to establish its commission; or
 
(4)it consists of an attempt to commit the offense charged or an
otherwise included offense. 

Id. The Texas Court of Criminal Appeals has articulated the test as follows: 
First, the lesser-included offense must be included within the proof
necessary to establish the offense charged, and second, some evidence
must exist in the record that if the defendant is guilty, he is guilty only
of the lesser-included offense. 
Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). Rousseau 's two
prongs have evolved into a four-step inquiry to determine if submission of a charge on
a lesser-included offense is warranted: (1) determination of the elements of the
offense actually charged; (2) identification of the necessary facts in light of the offense
charged; (3) an examination of the elements of the offense claimed to be a lesser-included offense to see if its elements fall within any subsection of article 37.09;
and (4) review of the evidence actually presented to prove the elements of the
charged offense to see if that proof also shows the lesser-included offense. Jacob v.
State, 892 S.W.2d 905, 907-08 (Tex. Crim. App. 1995); Ford v. State,
38 S.W.3d 836, 843 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd). We will now
undertake this analysis.
1. Determination of the Elements of the Offense Actually Charged
         If none of the subsections of article 37.09 applies, the "lesser" offense is
not a "lesser-included" offense as a matter of law, and our inquiry is over. See Ford,
38 S.W.3d at 842. Each subsection of article 37.09 defines the lesser-included
offense in relation to the offense charged. Analysis of this relationship is demanded
because a lesser-included offense necessarily must be included within the greater
offense to satisfy due process and notice requirements. Id. at 841 (citing Jacob,
892 S.W.2d at 907). An accused constitutionally cannot be convicted of an offense
not subsumed in the offense charged even if it is proved by the evidence presented at
trial. See Jacob, 892 S.W.2d at 907. The State, in attempting to prove one offense,
cannot obtain a conviction by proving another. See id. 
         A person commits assault by: (1) intentionally, knowingly, or recklessly causing
bodily injury to another; or (2) intentionally or knowingly threatening another with
imminent bodily injury. Tex. Pen. Code Ann. § 22.01(a)(1), (2) (Vernon Supp. 2004);
see Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001). A person commits
aggravated assault by committing assault as defined in section 22.01 and (1) causing
serious bodily injury to another; or (2) using or exhibiting a deadly weapon during
commission of the assault. Tex. Pen. Code Ann. § 22.02(a)(1), (2) (Vernon
Supp. 2004); see Green v. State, 831 S.W.2d 89, 93 (Tex. App.–Corpus
Christi 1992, no writ). In this case, the indictment alleged in relevant part that Clay:
on or about October 28, 2001, in Nueces County, Texas, did then and
there intentionally, knowingly, and recklessly cause bodily injury to
another, John Henderson, by shooting John Henderson, and the
defendant used and exhibited a deadly weapon, to wit: a firearm, during
the commission of said assault. 

2. Identification of the Necessary Facts in Light of the Offense Charged
         The "facts required to establish" the charged offense are that Clay intentionally,
knowingly, and recklessly caused bodily injury to John Henderson by shooting him
with a firearm. See Jacob, 892 S.W.2d at 908-09 (explaining that "facts required"
means evidence legally required to prove elements of charged offense). 

3. Examination of the Elements of Deadly Conduct
         "Deadly conduct" requires the State to prove that the accused: (1) recklessly
engaged in conduct that placed another in imminent danger of serious bodily injury; or
(2) knowingly discharged a firearm at or in the direction of one or more individuals. 
Tex. Pen. Code Ann. § 22.05(a), (b)(1) (Vernon 2003). Because a greater offense may
be committed in more than one way, we analyze each case to determine whether the
lesser offense is actually a "lesser-included" offense of the charged offense. The
Court of Criminal Appeals has explained:
[W]hether one offense bears such a relationship to the offense charged
[so as to be considered a lesser-included offense] is an issue which must
await a case by case determination, both because the statute defines
lesser included offenses in terms of the offense charged and because it
defines lesser included offenses in terms of the facts of the case. 
Day v. State, 532 S.W.2d 302, 315-16 (Tex. Crim. App. 1975) (op. on reh'g). 
Deadly conduct can be a lesser-included offense of aggravated assault. Bell v.
State, 693 S.W.2d 434, 438-39 (Tex. Crim. App. 1985); Guzman v. State,
988 S.W.2d 884, 885-86 (Tex. App.–Corpus Christi 1999, no pet.). The State
notes that Bell and Guzman involved aggravated assaults in which the assaultive
conduct was use of a deadly weapon during the assault, not causing bodily injury. 
Compare Tex. Pen. Code Ann. § 22.01(a)(1), (2) (Vernon Supp. 2004). Rather, the
State argues, the analysis in Ford, a bodily injury case, is more on point. See Ford,
38 S.W.3d at 841. Ford held that deadly conduct was a lesser-included offense of
aggravated assault where "proof of causing bodily injury by the actual use of a deadly
weapon constitutes proof of engaging in conduct that places another in imminent
danger of serious bodily injury." Id. at 845. We agree. 
         In proving that Clay intentionally, knowingly, and recklessly caused bodily injury
to Henderson by shooting him with a firearm, the State was required to prove that
Clay: (1) recklessly engaged in conduct that placed another in imminent danger of
serious bodily injury; or (2) knowingly discharged a firearm at Henderson or in his
direction. See Tex. Pen. Code Ann. § 22.05(a), (b)(1) (Vernon 2003); see also Ford,
38 S.W.3d at 841. We now determine if the elements of deadly conduct fall within
any subsection of article 37.09. See Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon 1981); see also Jacob, 892 S.W.2d at 907-08. 
         Comparing the statutory elements of deadly conduct to the indicted offense, we
conclude that deadly conduct is a separate offense and does not "consist of an
attempt to commit the offense charged." See Tex. Code Crim. Proc. Ann.
art. 37.09(4) (Vernon 1981). The indictment alleged intentional, knowing, and
reckless as the applicable culpable mental states. Thus, deadly conduct does not differ
from the charged offense of aggravated assault in this case "only in the respect that
a less culpable mental state suffices to establish its commission." See Tex. Code
Crim. Proc. Ann. art. 37.09(3) (Vernon 1981). However, deadly conduct does differ
from the offense charged in the respect that a less serious injury or risk of injury to
Henderson "suffices to establish its commission." See Tex. Code Crim. Proc. Ann.
art. 37.09(2) (Vernon 1981). Finally, deadly conduct is established by proof of the
same or less than all the facts required to establish that Clay committed aggravated
assault with a deadly weapon as charged in the indictment. See Tex. Code Crim. Proc.
Ann. art. 37.09(1) (Vernon 1981); see also Ford, 38 S.W.3d at 841. Therefore,
depending on the evidence, we conclude that the offense of deadly conduct may be
included within the indicted offense in this case, aggravated assault with a deadly
weapon. See Ford, 38 S.W.3d at 846. The remaining issue is whether some evidence
exists that would permit a jury rationally to find that if Clay is guilty, he is guilty only
of knowing deadly conduct or reckless deadly conduct. See Guzman, 988 S.W.2d
at 886; see also Rousseau, 855 S.W.2d at 673 (second prong of Rousseau test). 
4. Review of the Evidence Actually Presented
         When addressing the second prong of the Rousseau test, we focus on the
record evidence. See Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). 
Whether evidence supports a lesser-included offense is a function of whether: 
(1) anything more than a scintilla of evidence either affirmatively refutes or negates an
element of the greater offense; or (2) evidence on the issue is subject to two different
interpretations, one of which negates or rebuts an element of the greater offense. 
Arevalo v. State, 943 S.W.2d 887, 889 n.5 (Tex. Crim. App. 1997). Anything more
than a scintilla of evidence is sufficient to support submission of the lesser-included
offense in the jury charge. See id. We consider all trial evidence in determining if
there is more than a scintilla of evidence to support the lesser charge. See id. Any
evidence may support the lesser charge, regardless of which party offered it and
regardless of whether the evidence was weak, impeached, or contradicted. Bell,
693 S.W.2d at 442. 
a. Evidence of Knowing Deadly Conduct
         Clay does not dispute in his brief there is evidence he discharged a weapon at
Henderson or in Henderson's direction. See Tex. Pen. Code Ann. § 22.05(b)(1)
(Vernon 2003). He argues, however, that the evidence is undisputed he caused bodily
injury to Henderson by shooting him with a firearm. Therefore, Clay concludes, the
evidence shows that if he is guilty, he is guilty of aggravated assault with a deadly
weapon, not of knowingly discharging a firearm at Henderson or in his direction. 
Aggravated assault, Clay contends, was the only offense proved by the evidence. 
Therefore, the evidence did not support submission of the knowing deadly conduct
charge. 
         We conclude, however, that the jury could have disbelieved Henderson's
testimony that Clay shot him in the arm and leg. It could have believed one
eyewitness's testimony that Henderson did not appear to be injured after Clay fired. 
It also could have believed the second eyewitness's testimony that Henderson shot
himself. Thus, more than a scintilla of evidence supports a conclusion by the jury that
Clay knowingly shot at Henderson or in his direction but missed. See Tex. Pen. Code
Ann. § 22.05(b)(1) (Vernon 2003); see also Bignall, 887 S.W.2d at 23. 

b. Evidence of Reckless Deadly Conduct
         Our analysis of the evidence supporting the misdemeanor offense of recklessly
engaging in conduct that placed another in imminent danger of serious bodily injury is
more problematic. See Tex. Pen. Code Ann. § 22.05(a) (Vernon 2003). At the charge
conference, the trial court expressed its view of the evidence supporting reckless
deadly conduct:
If the Defendant's witnesses are to be believed most favorably to the
Defendant, then there is evidence that the Defendant waved a gun at the
victim and that the victim went to a garage and shot himself. Under
those circumstances, it would be appropriate to submit the misdemeanor
charge of deadly conduct, and I will do so. 

         Accordingly, the trial court submitted the following charge: 
In order to find the Defendant guilty of the lesser-included offense
of recklessly engaging in Deadly Conduct, you must find that the State
has proven to you beyond a reasonable doubt each and every one of the
following elements of said lesser-included offense, namely, that: 
 
1.the Defendant, THOMAS CLAY,
 
2.on or about October 28, 2001,
 
3.in Nueces County, Texas,
 
4.did then and there
 
5.recklessly
 
6.engage in conduct
 
7.that placed John Henderson in imminent danger of serious bodily
injury
 
8.by waving a firearm at John Henderson. 

         We have examined the record. Henderson's testimony did not include any
description of Clay "waving a firearm" at him. Henderson's only testimony about
Clay's firearm was when he described his first glimpse of the weapon just before Clay
shot him:
[Henderson]: . . . I asked Mr. Clay, I said, "What is the problem,
man?" And before I know it, I looked right above his shoulder and then
that's when I seen the gun. 
 
[Prosecutor]: What kind of gun did you see? 
 
[Henderson]: Like a .38. 
 
[Prosecutor]: A revolver? 
 
[Henderson]: Yes, sir. 
 
[Prosecutor]: Okay. What happened when you saw the gun? 
 
[Henderson]: He started, he had already started shooting. . . .

* * *
 
[Prosecutor]: And what happened after you made that U-turn? 
 
[Henderson]: Mr. Clay ended up making a turn right there, too. 
I got out. I got back out of my car because he had stopped with this
dead look. He started looking at me, and I asked him what was the
problem. Then that's when I saw a gun over his shoulder. He started
shooting. . . .
         Moreover, the second eyewitness testified that it was Henderson, not Clay, who
displayed a firearm during the earlier confrontation:
[Prosecutor]: John J. Henderson came from behind Thomas Clay
and drove in front of him?
 
[Witness]: Yes.
 
[Prosecutor]: And blocked his traffic?
 
[Witness]: Yes, sir.
 
[Prosecutor]: What happened after that?
 
[Witness]: Okay. He jumped out of the vehicle with what
appeared to be a weapon, a handgun, and start shouting like, "What the
[expletive] are you looking at? Don't be looking at me." [Expletive] like
this. He used profanity loud where we could hear it, and [Clay], like,
well, like scared ducking in his car or whatever and rolled the window up
or whatever and he was, like, "If I see you looking at me again, there's
going to be some problems." Whooptie-whoop. All right, so he run back
around, jumped back in his car, and he drove down Nueces. At that time
[Clay] proceeded down the street. . . .

         Considering all the trial evidence, we determine there is less than a scintilla of
evidence to support the lesser-included charge that Clay engaged in conduct that
placed Henderson in imminent danger of serious bodily injury by "waving a firearm"
at him. See Bignall, 887 S.W.2d at 23. Further, a lesser-included offense must be
established by less or the same proof, not additional matters not alleged. Douglas v.
State, 915 S.W.2d 166, 169 (Tex. App.–Corpus Christi 1996, no pet.). Under the
indicted offense of aggravated assault by intentionally, knowingly, and recklessly
causing bodily injury to Henderson by shooting him with a firearm, the State was not
required to prove that Clay recklessly placed Henderson in imminent danger of serious
bodily injury by "waving a firearm" at him. There is no evidence that Clay "waved the
firearm" at Henderson during either of the parties' two encounters. Although it is a
close question, under the evidence presented, we hold that recklessly engaging in
deadly conduct by waving a firearm at Henderson was not a lesser-included offense
of the indicted offense of aggravated assault with a deadly weapon. See id. 
Accordingly, we hold there is error in the charge. See Posey, 966 S.W.2d at 60. To
properly analyze whether the error caused sufficient harm to require reversal, we next
determine if Clay preserved it. 
B. Was the Error in the Charge Harmful?
1. Was the Error Preserved?
         To properly object to the court's proposed charge or request that a particular
instruction or question be included in the charge, an accused must make a written
objection or request. Tex. Code Crim. Proc. Ann. art. 36.15 (Vernon Supp. 2004);
Vasquez v. State, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996). The accused meets
the requirement that the objection or request be in writing by dictating it to the court
reporter in the presence of the court and the State's counsel. Tex. Code Crim. Proc.
Ann. art. 36.15 (Vernon Supp. 2004); Ford, 38 S.W.3d at 841. 
         After the State rested but before the defense began its case-in-chief, the trial
court convened a preliminary charge conference:
THE COURT: You may be seated. Any particular instructions you
want in the Charge, [Defense Counsel]?
 
[Defense Counsel]: Your Honor, if the testimony of [the two
eyewitnesses] permit, we would like to include the lesser-included
offense of deadly conduct, a Class A misdemeanor if the jury finds that
[sic] opposed to the aggravated assault with deadly weapon. That is the
only additional instruction that I thought we may be requesting. 
 
THE COURT: All right. We'll see you tomorrow at 8:45. 

         At the charge conference following the close of evidence, the trial court and
lawyers discussed charging on the lesser-included offense:
THE COURT: Let me just look at this for a second. Okay. Any
other changes?
 
[Prosecutor]: I think that's all I have on that.
 
THE COURT: All right. Do you have any changes?
 
[Defense Counsel]: Yes, Your Honor. When we requested for
Paragraph 5, Page 5 and 6, for the lesser-included offense of – 
 
THE COURT: Right. 
 
[Defense Counsel]: – deadly conduct, we had contemplated the
deadly conduct 22.05(a) not (b), the difference being the inclusion of the
misdemeanor offense and not the third-degree felony offense.
 
THE COURT: Well, but there's no question that he used a gun
according to the evidence.
 
[Defense Counsel]: That's correct, Your Honor, but we request –
I also think the evidence that has been presented supports the inclusion
of the Class A misdemeanor, and we would elect that language to be
included as opposed to the third-degree felony language. I think in light
of the prosecution's corroboration of the provocation defense, I think that
further supports our request, the difference in the language being that the
Defendant recklessly engaged in conduct that placed another in imminent
danger of serious bodily injury. Well, if the jury is prone to believe that
he provoked Mr. Henderson into this gun play, well, then, certainly the
jury could believe that he recklessly engaged in some type of conduct
that placed Mr. Henderson in imminent danger of serious bodily injury. 
It's not our intent to try two different felonies. It's our intent to include
in the lesser-included offense so the jury can pick as opposed to if they're
having difficulty with aggravated assault. 
 
* * *
 
[Defense Counsel]: Your Honor, the State's own Indictment
charges the aggravated assault with intentional, knowing, and reckless
aggravated assault. 
 
THE COURT: That's for the assault.
 
[Defense Counsel]: That's correct, Your Honor. The Code
Section 22.05, deadly conduct, contemplates two different types of
deadly conduct, two different crimes of deadly conduct. I don't – I think
the evidence supports either. I think the evidence supports both. The
elements are certainly apparent from the evidence that has been
presented to this court. We do not wish to elect to provide ourselves
with a third-degree offense of lesser included. We elect to present a
special charge for the lesser-included offense of the Class A
misdemeanor. The basis for that of whether or not we can present that
is whether or not the evidence supports the presentation of those
elements. I don't think it has to one over the other. I think the evidence
dictates what is submissible and what is not, and I think the evidence
clearly allows either or both, and we are electing to include in our special
charge to the jury an inclusion of the lesser-included offense of the
Class A misdemeanor offense of deadly conduct, not the third-degree
felony offense of Deadly Conduct. 
 
[Prosecutor]: Your Honor, may I respond?
 
THE COURT: Yes, sir. 
 
[Prosecutor]: Deadly conduct, Your Honor, when it's a lesser
included of an aggravated assault, it's more of an issue of dealing with
the injury element of the offense of aggravated assault. For example, in
this case the witness provided testimony that he saw Mr. Henderson
shoot himself. The request came from [Defense Counsel] on deadly
conduct. Well, if that's the case, if a witness wants to claim that Mr.
Henderson shot himself and that the Defendant just discharged a firearm,
then we certainly have a lesser included of deadly conduct and that's
what we have here in this particular offense. There has been no
testimony, no testimony whatsoever that the Defendant did not
discharge a firearm or wield a knife and that's what the lesser included
will all be in this particular case. He wants to sit there and argue – If he
wants a lesser included of deadly conduct, it has to match the facts of
the case. It has to match what the witnesses have said, and what the
witnesses said, if he wants a lesser included, is dealing with that injury
element of the offense. That's how you get a lesser included of deadly
conduct with an aggravated assault. The only witness that is going to
provide that is [the second eyewitness], and that's a credibility question
for the jury to decide, but with what [the second eyewitness] said it's
clear that the Defendant discharged a weapon, and therefore, the only
instruction on lesser included element is going to be the felony deadly
conduct. 
 
[Defense Counsel]: I just disagree with the State's interpretation
of what lesser-included offense is, Your Honor. I think the testimony
supports either or both, and we are electing to include one, not the other. 
Sans approval of that, I would ask that the entire election be stricken. 
 
THE COURT: You don't want any lesser included charges?
 
[Defense Counsel]: I want the lesser-included offense of the
Class A misdemeanor deadly conduct. I think the evidence supports the
inclusion of that. If the Court is not inclined to believe that and is
inclined to believe that the evidence only supports the third-degree felony
lesser-included offense of deadly conduct, then I would not wish to have
any lesser-included offense third-degree. I do not wish to have a third-degree offense that the jury can pick between. I wish to have a Class A
misdemeanor they can pick to. We have already tried this once. I don't
really want to try this same allegation a third time. 
 
THE COURT: If the Defendant's witnesses are to be believed most
favorably to the Defendant, then there is evidence that the Defendant
waved a gun at the victim and that the victim went to a garage and shot
himself. Under those circumstances, it would be appropriate to submit
the misdemeanor charge of deadly conduct, and I will do so. 
 
[Prosecutor]: Both deadly conducts, Your Honor? 
 
THE COURT: Both deadly conducts. 
 
[Prosecutor]: So there will be aggravated assault, deadly conduct
one, deadly conduct, two. With regards to the Charge, when you do it
because it is an act of recklessness, the act of recklessness has to be
stated in the elements of the offense. What is the act of recklessness
going to be, Your Honor? 
 
THE COURT: Well, I didn't include that in what I had done here,
but I can certainly do that. 
 
 [Prosecutor]: And it should be, I guess if you're going to do that,
the Defendant on or about in Nueces County did then and there, I guess
you're going to put recklessly and – 
 
THE COURT: Let's see. Recklessly engaged in conduct that
placed John Henderson, an individual, in imminent danger of serious
bodily injury by waving a firearm, I think the testimony was in his face,
something like that, testimony along those lines. 
 
[Defense Counsel]: I would still object, though, Your Honor, to the
inclusion of the third-degree felony. 
 
THE COURT: Well, let's settle the misdemeanor first. By waving
a firearm at John Henderson. Any problem with that language? 
 
 [Prosecutor]: Not a problem, Your Honor. 
 
[Defense Counsel]: Where is that language included, Your Honor?
 
THE COURT: Beg your pardon?
 
[Defense Counsel]: Where exactly is that language included?
 
THE COURT: That would be into something that you don't have
right now because this would be adding the misdemeanor offense of
deadly conduct which I am preparing in the Charge as recklessly engaged
in deadly conduct as opposed to knowingly engaged in reckless conduct.
 
[Prosecutor]: That would be like Number 6 of that?
 
THE COURT: Yes. The way I have it drawn up as elements – Oh,
as a paragraph?
 
[Prosecutor]: Yes.
 
THE COURT: Yes, that would be 6. 
 
[Prosecutor]: It's a paragraph?
 
THE COURT: Yes. Paragraph 6 and then it would have additional
elements – 
 
[Prosecutor]: It would have the Defendant, Thomas Clay, on or
about October 28 in Nueces County did then and there and then – 

                  THE COURT: Recklessly –
 
 [Prosecutor]: And then you put engaged in conduct – 
 
THE COURT: That placed John Henderson – 
 
[Prosecutor]: – that placed John Henderson – 
 
THE COURT: – in imminent – 
 
[Prosecutor]: By waving – 
 
THE COURT: In imminent danger of serious bodily injury, (8), by
waving a firearm at John Henderson. 
 
 [Prosecutor]: Okay. 
 
THE COURT: Any other changes? 
 
[Defense Counsel]: Not as to that specific. 
 
THE COURT: Okay. Let me print it out. 
 
[Defense Counsel]: And I will still be allowed to object to the
inclusion? 
 
THE COURT: Sure, yes, but I will let you see it first. 

                  (Recess)
 
THE COURT: All right. The Court has submitted to Counsel the
revised Charge. Does the State have any objection to it? 
 
[Prosecutor]: No objection. 

                  THE COURT: [Defense Counsel], do you?
 
[Defense Counsel]: Yes, Your Honor. We object to the submission
by the State of the lesser-included offense of knowingly engaged in
deadly conduct on the grounds that it fails to meet the requirements of
the Russo [sic] test under Article 37.09 of the Texas Code of Criminal
Procedure, specifically, the second element of the Russo [sic]-Aguilar-Royster test in that the evidence must exist in the record that would
permit a jury to rest [sic] and find that if the Defendant is guilty, he is
guilty only of the lesser-included offense and not both the aggravated
assault and the lesser-included offense. It's our contention that the
evidence that if proven that supports the conviction of aggravated assault
also automatically supports the conviction of the knowingly engaged in
deadly conduct. It's the exact same evidence we're talking about so,
therefore, we feel that it fails under the Royster, the Russo [sic] test and
should not be included as a lesser-included offense. 
 
THE COURT: The objections are overruled. The Court finds that
there is evidence to support the submission of the lesser-included offense
of knowingly engaged in deadly conduct if the jury were to believe that
part of the evidence. . . . 

         Thus, the record reflects that Clay initially requested the reckless deadly conduct
charge as a lesser-included offense. "Just as the law of entrapment estops the
State from making an offense of conduct it induced, the law of invited error estops a
party from making an appellate error of an action it induced." Prystash v. State,
3 S.W.3d 522, 531 (Tex. Crim. App. 1999); Gonzalez v. State, 115 S.W.3d 278, 286
(Tex. App.–Corpus Christi 2003, pet. ref'd). We find that Clay is estopped on appeal
from complaining of submission of reckless deadly conduct in the charge. Moreover,
even if he had not invited the error, Clay did not object to inclusion of reckless deadly
conduct in the court's final charge. Accordingly, we will determine if he suffered
egregious harm as a result of the error. See Almanza, 686 S.W.2d at 171. Errors that
result in egregious harm are those that affect "the very basis of the case," deprive the
accused of a "valuable right," or "vitally affect a defensive theory." Hutch,
922 S.W.2d at 171. 
2. Was the Error Egregious?
         The following factors inform an Almanza egregious-error harm analysis: (1) the
charge itself; (2) the state of the evidence, including contested issues and the weight
of the probative evidence; (3) arguments of counsel; and (4) any other relevant
information revealed by the record of the trial as a whole. Id. The burden lies with the
appellant to persuade the reviewing court that the error was harmful. See Abdnor v.
State, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). If the appellant is unable to do
so, the error will not result in reversal. Id. 
         Clay's briefing related to harm is encompassed in a single paragraph:
The charge on deadly conduct was designed and given in order to
facilitate a compromise verdict and lessen the appellant's chances for a
not guilty verdict based on self-defense. This case was one in which the
jury should have either found the appellant not guilty by reason of self-defense or guilty of aggravated assault with a deadly weapon – as
alleged in the indictment. The appellant was denied a fair jury trial by
reason of the trial court's charge on guilt-innocence. 

         This argument does not cite any authority. It is inadequately briefed. See Tex.
R. App. p. 38.1(h). Clay makes no attempt to explain the actual harm from the trial
court's charge. See Almanza, 686 S.W.2d at 174 (requiring review of record to
"illuminate the actual, not just theoretical, harm to the accused"). 
         We already have concluded that the lesser-included offense of knowing deadly
conduct was authorized by the indictment. We note that the erroneous reckless
deadly conduct charge, which authorized conviction on a theory not alleged in
the indictment, is not necessarily free from egregious error even when the evidence
is sufficient to support the allegations of the indictment. See Frost v. State,
25 S.W.3d 395, 401 (Tex. App.–Austin 2000, no pet.) (citing Lang v. State,
698 S.W.2d 223, 225 (Tex. App.–Dallas 1985, no pet.)). Nonetheless, in the
absence of any analysis by Clay of how he was harmed and after reviewing the
charge, the evidence, and the arguments of counsel, we conclude that the record
reveals dispositive "relevant information" that the jury acquitted Clay of the indicted
charge and convicted him of a properly submitted lesser-included offense. See Castillo
v. State, 944 S.W.2d 440, 441 (Tex. App.–Houston [14th Dist.] 1997, no pet.); see
also Hutch, 922 S.W.2d at 171. 
         In Castillo, the indictment alleged aggravated robbery by threat and use of a
deadly weapon. The jury was charged with aggravated robbery under two theories: 
(1) robbery by threat (a proper lesser-included offense); and (2) robbery by causing
bodily injury (an erroneous submission). See Castillo, 944 S.W.2d at 441-42. The
jury found the accused guilty of robbery by causing bodily injury. See id. at 442. The
Fourteenth Court of Appeals held there was no egregious harm because the evidence
was sufficient to convict on robbery by threat, a properly submitted theory. See id.
at 443-44 (holding that charge error did not "rise to level of egregious harm"). 
Similarly, we hold that the error stemming from the erroneous submission of reckless
deadly conduct to the jury was not sufficient to affect "the very basis of the case,"
deprive Clay of a "valuable right," or "vitally affect a defensive theory." See Hutch,
922 S.W.2d at 171. We hold that Clay did not meet his burden of persuading us that
the erroneous charge on reckless deadly conduct egregiously harmed him. See
Abdnor, 871 S.W.2d at 732; see also Almanza, 686 S.W.2d at 171. Accordingly, we
overrule Clay's first issue. 
         We turn to Clay's second issue. He challenges the factual sufficiency of the
evidence to support his conviction for knowing deadly conduct. 
IV. FACTUAL-SUFFICIENCY ANALYSIS
                                  A. Standard and Scope of Review
         This Court measures the factual sufficiency of the evidence in this case against
a hypothetically correct jury charge. Adi v. State, 94 S.W.3d 124, 131 (Tex.
App.—Corpus Christi 2002, pet. ref'd); see Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).


 A hypothetically correct jury charge is one that "accurately
sets out the law, is authorized by the indictment, does not unnecessarily increase
the State's burden of proof or unnecessarily restrict the State's theories of liability,
and adequately describes the particular offense for which the defendant was tried."
Malik, 953 S.W.2d at 240. A hypothetically correct jury charge would not simply
quote from the controlling statute. Gollihar v. State, 46 S.W.3d 243, 254 (Tex.
Crim. App. 2001). Its scope is limited by "the statutory elements of
the offense . . . as modified by the charging instrument." Fuller v. State,
73 S.W.3d 250, 254 (Tex. Crim. App. 2002) (Keller, P.J., concurring) (quoting
Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)). When a statute lists
more than one method of committing an offense, and the indictment alleges some, but
not all, of the statutorily listed methods, the State is limited to the methods alleged. 
Fuller, 73 S.W.3d at 255; Curry, 30 S.W.3d at 404. 
         We are constitutionally empowered to review the judgment of the trial court to
determine the factual sufficiency of the evidence used to establish the elements of the
charged offense. Johnson v. State, 23 S.W.3d 1, 6 (Tex. Crim. App. 2000). In
determining the factual sufficiency of the elements of the offense, we view all the
evidence neutrally, not through the prism of "the light most favorable to the
prosecution." Id. at 6-7 (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996)). We set aside a finding of guilt only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Johnson, 23 S.W.3d at 7. A clearly wrong and unjust finding of guilt is
"manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." Rojas
v. State, 986 S.W.2d 241, 247 (Tex. Crim. App. 1998). 
         In conducting a factual-sufficiency review, we review the fact finder's weighing
of the evidence. Johnson, 23 S.W.3d at 7 (citing Clewis, 922 S.W.2d at 133). We
review the evidence that tends to prove a material disputed fact and compare it with
evidence that tends to disprove it. Johnson, 23 S.W.3d at 7. We are authorized to
disagree with the fact finder's determination. Id. However, we approach a factual-sufficiency review with appropriate deference to avoid substituting our judgment for
that of the fact finder. Id. Our evaluation should not intrude substantially on the fact
finder's role as the sole judge of the weight and credibility given to witness
testimony.  Id. 
         We always remain aware of the fact finder's role and unique position, a position
we are unable to occupy. Id. at 9. Exercise of our authority to disagree with the fact
finder's determination is appropriate only when the record clearly indicates our
intervention is necessary to stop manifest injustice. Id. Otherwise, we accord due
deference to the fact finder's determinations, particularly those concerning the weight
and credibility of the evidence. Id. 
         Every fact need not point directly and independently to the accused's guilt. 
Vanderbilt v. State, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). A finding of guilt
can rest on the combined and cumulative force of all the incriminating circumstances.
Id. When an appellant challenges the factual sufficiency of the elements of the
offense, we ask whether "a neutral review of all the evidence . . . demonstrates that
the proof of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof." Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex. Crim.
App. 2003) (quoting Johnson, 23 S.W.3d at 11); see Swearingen v. State,
101 S.W.3d 89, 97 (Tex. Crim. App. 2003). 
         In conducting a factual-sufficiency review in an opinion, we "show
our work" when we consider and address the appellant's main argument for
urging insufficiency of the evidence. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003); Johnson, 23 S.W.3d at 9; Manning v. State, 112 S.W.3d 740, 747 (Tex.
App.–Houston [14th Dist.] 2003, pet. denied); see Tex. R. App. P. 47.1. This practice
benefits the parties, maintains the integrity of the justice system, and improves
appellate practice.  Sims, 99 S.W.3d at 603; Manning, 112 S.W.3d at 747. If we
reverse a criminal case for factual insufficiency, we vacate the judgment of conviction. 
Clewis, 922 S.W.2d at 133-34. We remand for a new trial a criminal case reversed
for factual insufficiency, so a second fact finder has the chance to evaluate the
evidence. Swearingen, 101 S.W.3d at 97. 
B. The Hypothetically Correct Jury Charge
         The hypothetically correct jury charge for deadly conduct in this case would ask
the jury if Clay: (1) knowingly (2) discharged a firearm (3) at Henderson or in his
direction. See Tex. Pen. Code Ann. § 22.05(a), (b)(1) (Vernon 2003). Knowing deadly
conduct is a nature-of-conduct offense, not a result-oriented offense. Ford,
38 S.W.3d at 845. Therefore, proof that Clay knowingly engaged in the prohibited
conduct is sufficient to sustain his conviction. See id. The State was not required to
prove a specific result. See id. A person acts knowingly with respect to the nature
of the conduct when the accused is aware of the nature of the conduct. Tex. Pen.
Code Ann. § 6.03(b) (Vernon 2003); Donoho v. State, 39 S.W.3d 324, 328 (Tex.
App.–Fort Worth 2001, pet. ref'd) (op. on reh'g). A fact finder may infer a
culpable mental state from the acts, words, and conduct of the accused
and from the circumstances surrounding the acts in which the accused engaged. 
Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); Dillon v.
State, 574 S.W.2d 92, 94-95 (Tex. Crim. App. [Panel Op.] 1978). 
C. Measuring the Evidence against the Hypothetically Correct Jury Charge
         In our factual-sufficiency analysis, we view all the evidence neutrally, favoring
neither the prosecution nor Clay. See Johnson, 23 S.W.3d at 6-7 (citing Clewis,
922 S.W.2d at 129). Clay did not testify at trial. Henderson testified that Clay shot
him in the arm and leg. The jury was free to disbelieve Henderson's testimony,
however, and believe instead other testimony that Clay shot at Henderson or in his
direction but missed, and Henderson shot himself. 
         Faced with a record of historical facts that supports conflicting inferences, we
presume that the trier of fact resolved any conflicts in favor of the prosecution. See
Jackson, 443 U.S. at 326. The jury chose to resolve the evidence in favor of the
State. We defer to that resolution. See id. Proof of Clay's guilt of knowing deadly
conduct is not so obviously weak as to undermine confidence in the jury's
determination, nor is the proof of his guilt greatly outweighed by contrary proof. See
Zuliani, 97 S.W.3d at 593-94. Viewing the evidence neutrally, we hold the evidence
factually sufficient to support the conviction. See Johnson, 23 S.W.3d at 6. We
overrule Clay's second issue. 
 V. CONCLUSION
         We affirm the judgment of the trial court. 
 
                                                                        ERRLINDA CASTILLO
                                                                        Justice


Do Not Publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and filed
this 15th day of July, 2004. 

Concurring Opinion by Justice Yañez.