Charles William GREEN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 13–91–123–CR, 13–91–124–CR.

Court of Appeals of Texas, Corpus Christi.

May 21, 1992.

Rehearing Overruled June 25, 1992.

Alfredo Padilla, Edmund Cyganiewicz, Brownsville, for appellant.

Charles William Green, pro se.

Luis V. Saenz, County Atty., Crim. Dist., John A. Olson, Asst. County Atty., Brownsville, for appellee.

Before NYE, C.J., and GILBERTO HINOJOSA and SEERDEN, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Charles William Green appeals from a conviction on two charges of aggravated assault with a knife and with a motor vehicle, respectively. After Green pleaded true to habitual enhancement counts, the jury assessed punishment at 40 years in prison. Green brings four points of error. We affirm.

The victim, Marco Antonio Tapia Cardoza, provided the only eyewitness account of these assaults. Cardoza testified to four separate encounters with Green, each of which occurred while Cardoza was working as a clerk at a convenience store during the night shift between 11:00 p.m. and 7:00 a.m. On the first encounter, while apparently intoxicated and standing in line to buy beer, Green had told Cardoza's co-worker that he was going to "let [the co-worker] have it with a pistol." Cardoza then asked Green to leave the store and informed him that, if he had any problem with that, he could take it up with Cardoza's supervisor the next day.

Three weeks later, Cardoza saw Green at around 11:00 p.m., again apparently intoxicated, at the door to the convenience store. Cardoza again told Green that he would not do business with him and to come back the next morning if he wanted to talk to Cardoza's supervisor. Green became angry, asked for the supervisor's name, and, after Cardoza wrote it down for him, Green left the store.

Later that night, at 1:30 a.m. while Cardoza was sweeping the store parking lot, a car arrived in an abrupt manner, with its tires screeching. When the car stopped some twenty to twenty-five feet away from him, Cardoza recognized Green as the driver. Green then accelerated the car at a high rate of speed toward Cardoza. Cardoza ran into the store in order to avoid being hit by the car, and, fearing that Green would drive the car into the store, continued some twelve feet into the store. Green stopped nine or ten feet from the store, gave an angry look, and then quickly drove away.

Later that night, Green drove back to the store. Cardoza did not recognize Green at first when he entered the store, because Green had driven back in a different car, and was wearing a different shirt and a hat with which Green attempted to cover his face while bending his head down. However, Cardoza nevertheless managed to recognize Green as he walked into the store, and Cardoza told Green to stop. Green continued one step farther. Cardoza again told him to stop, and observed that Green "had his hand towards the back." Green then drew a knife and took another step toward Cardoza. Cardoza then jumped on Green and struggled with him, sending both men to the floor and breaking the knife. Green managed to get up and out the door, and fled the scene in his car. Cardoza testified that he thought Green was going to kill him with the knife.

■ By his first and third points of error, Green challenges the sufficiency of the evidence. In reviewing the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Baugh v. State*, 776 S.W.2d 583, 585 (Tex.Crim.App.1989); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989).

Specifically by his first point of error, Green complains that the evidence is insufficient to prove beyond a reasonable doubt that he intentionally or knowingly threatened Cardoza with imminent bodily injury using a motor vehicle and later a knife. A person commits an assault under Tex.Penal Code Ann. § 22.01(a)(2) (Vernon 1989), if he intentionally or knowingly threatens another with imminent bodily injury. The offense becomes an aggravated assault under Tex.Penal Code Ann. § 22.-02(a)(4) (Vernon Supp.1992), if committed using a deadly weapon. *See Godsey v. State*, 719 S.W.2d 578, 584 (Tex.Crim.App. 1986).

Threats may be communicated by action or conduct as well as words. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex.Crim.App.1984). With regard to the car, Green's sudden acceleration toward Cardoza in an open parking lot forcing him to run inside the store is sufficient to show that Green intentionally threatened Cardoza with imminent bodily injury by use of a motor vehicle. *See Garcia v. State*, 685 S.W.2d 420, 422 (Tex.App.—San Antonio 1985, no pet.). With regard to the knife also, although no specific verbal threats were made, the circumstances suggest that Green intended to threaten Cardoza with imminent bodily injury. Green returned to the scene of the earlier assault in disguise, he continued to approach Cardoza even though he was told to stop, and at the same time he drew a knife which he had concealed behind him. This conduct is sufficient to infer, even without an explicit threat, that Green intentionally threatened Cardoza with imminent bodily injury by use of the knife. *See Martinez v. State*, 754 S.W.2d 831, 833 (Tex.App.—Houston [1st Dist.] 1988, no pet.). Green's first point of error is overruled.

By his third point of error, Green complains that the evidence is insufficient to show that either the automobile or the knife was a "deadly weapon."

An automobile is not a deadly weapon *per se.* Therefore, we must look to Tex.Penal Code Ann. § 1.07(a)(11)(B) (Vernon 1974), to determine whether it may be a deadly weapon because it "in the manner of its use or intended use is capable of causing death or serious bodily injury." *Morgan v. State*, 775 S.W.2d 403, 406 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (car on the tail of which person hung as the driver attempted to throw him off by alternately accelerating to high speeds and braking was a deadly weapon in the manner of its use); *Roberts v. State*, 766 S.W.2d 578 (Tex.App.—Austin 1989, no pet.) (truck that recklessly drove into an intersection at 80 to 100 miles per hour and collided with a car that was stopped at a red light was a deadly weapon in the manner of its use); *Parrish v. State*, 647 S.W.2d 8, 10 (Tex.App.—Houston [14th Dist.] 1982, no pet.) (car that pulled into driveway and crushed pedestrian's legs between itself and other car was a deadly weapon in the manner of its use).

In the present case, the evidence shows that Green accelerated the automobile toward Cardoza in a threatening manner that caused Cardoza to believe that he had to run into the store in order to avoid being hit. Although Cardoza was not actually hit by the car, wounds need not be inflicted before an automobile is declared to be a deadly weapon. *Parrish*, 647 S.W.2d at 11. We hold that evidence an automobile has been used to threaten a pedestrian in this manner is sufficient to show that the automobile was used in a manner capable of causing death or serious bodily injury. Thus, the evidence is sufficient to show that the automobile was a deadly weapon in the manner of its use or intended use.

With regard to the knife, neither was it a deadly weapon *per se. Limuel v. State*, 568 S.W.2d 309 (Tex.Crim.App.1978); *Villarreal v. State*, 809 S.W.2d 295, 297 (Tex.App.—Corpus Christi 1991, pet. ref'd). In order to be considered a deadly weapon, the knife must likewise be shown in the manner of its use or intended use to be capable of causing death or serious bodily injury. *Villarreal*, 809 S.W.2d at 297; Tex.Penal Code Ann. § 1.07(a)(11)(B) (Vernon 1974). In the present case, Cardoza

testified that Green drew a knife during the second assault. The knife was then broken during the ensuing struggle. Although the whole knife was never entered into evidence, the broken blade end of a kitchen steak knife was found by Cardoza, given to the police, and entered into evidence. Brownsville Police Detective Victor Jackson testified for the State that a knife like the one a portion of which was entered into evidence is a deadly weapon capable of causing bodily injury or death. We hold that the evidence was sufficient to show that the knife was a deadly weapon in the manner of its use or intended use. *See Hawkins v. State*, 605 S.W.2d 586, 588 (Tex.Crim.App.1980); *Sweeten v. State*, 686 S.W.2d 680, 685 (Tex.App.—Corpus Christi 1985, no pet.); *Garcia v. State*, 625 S.W.2d 831, 834 (Tex.App.—Houston [14th Dist.] 1981, pet. ref'd). Green's third point of error is overruled.

■ By his second point of error, Green complains that the trial court committed reversible error by allowing evidence of extraneous offenses. The general rule is that an accused is entitled to be tried for the offense for which he is charged and not for some collateral crime or for being a criminal in general. *Couret v. State*, 792 S.W.2d 106, 107 (Tex.Crim. App.1990); *Maynard v. State*, 685 S.W.2d 60 (Tex.Crim.App.1985). Exceptions to this rule allow extraneous matters to be admitted if the extraneous matter is relevant to a material issue, unless the probative value of that evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *Montgomery v. State*, 810 S.W.2d 372, 387–89 (Tex.Crim.App. 1990) (on rehearing); *Couret*, 792 S.W.2d at 107; *Morgan v. State*, 692 S.W.2d 877 (Tex.Crim.App.1985). Thus, evidence of other offenses may generally be introduced to establish the identity of the person or crime, intent, motive, system, or as part of the res gestae. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim.App.1972). In the present case, Green contends that the State improperly brought up three separate extraneous offenses.

First, during opening arguments, the prosecution told the jury that Cardoza would testify to an earlier incident in which Green "shows up drunk causing a disturbance, he tells him to leave, and he leaves." Cardoza then testified to an incident three weeks before the alleged assaults in which Green came to the store intoxicated and threatened Cardoza's co-worker. At that time, Cardoza refused to do business with Green and asked him to leave the store. We hold that evidence of this prior altercation between Cardoza and Green was admissible to show Green's motive and intent to commit the subsequent assaults against Cardoza, was thus relevant to a material issue, and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

■ Second, Brownsville police officer Andres Torres, the arresting officer with regard to the present offense, testified that he tried to subdue Green as quickly as possible in order to avoid a confrontation, because Torres knew Green and had chased him a couple of weeks before the arrest:

Q. Had you dealt with him before where there were also struggles and resisting arrest and things of that nature, chases an stuff?

A. It was a couple of weeks before, couple of weeks before this incident, we had a chase with him.

However, during Green's earlier cross-examination of Torres, counsel had questioned him about the reason he used force in making the arrest and implied that Green had not provoked him or posed a sufficient threat for Torres to have forced him to the ground in the process of making the arrest, but that Torres "already ha[d] it in for Mr. Green." When the defendant "opens the door" on an issue by attempting to present an incomplete picture of an incident, the State is permitted to complete the picture by presenting evidence that would otherwise have been inadmissible. *Lucas v. State*, 791 S.W.2d 35, 53–54 (Tex.Crim. App.1989); *Brandley v. State*, 691 S.W.2d 699, 709 (Tex.Crim.App.1985). In the present case, by questioning the degree of

force used against him by the arresting officer, Green thus opened the door for the State to show the true reason Officer Torres used forceful measures.

■ Third, Donna Gonzales, Green's sister, testified generally that Green did not dress in the manner described by Cardoza and that Green and his brother, Floyd Hendricks, were often mistaken for each other. On cross-examination of Gonzales, the State attempted to show, over Green's objection, that Gonzales had attempted to defend her brother in other situations:

> Q. And as a matter of fact, there [sic] is not the first time that you go before certain authorities to defend your brother Charles Green, isn't that true?

> \* \* \* \* \* \*

> Q. On another occasion involving an accident, a failure to stop and render aid ... You also were questioned by authorities, and back then you also came up with a story that it was not Charles Green, am I correct?

This questioning of Gonzales was supposedly relevant to her credibility as having come to her brother's aid in a similar way in the past. Gonzales answered these questions affirmatively, but testified that with regard to the July 1988 incident she had been cooperative with the authorities. The State then called DPS Trooper Roland Casteneda as a rebuttal witness. Casteneda testified that Gonzales had been uncooperative in his investigation of Green for a hit-and-run felony accident.

■ Generally, all facts tending to show bias, interest, prejudice, or any other motive, or mental state of the witness, which fairly considered and construed might even remotely tend to affect his credibility, should be admitted. *Hinojosa v. State*, 788 S.W.2d 594, 600 (Tex.App.— Corpus Christi 1990, pet. ref'd). In the present case, with regard to Gonzales' testimony that she had come to Green's defense in a similar way in the past, the inference to be drawn is that the similarity of her past defense of Green somehow shows a bias in favor of Green or a plan or scheme to continue to exculpate him based on mistaken identity. However, simply be-cause Gonzales had come to Green's defense in the past, under circumstances that were not further developed in the present record, is not sufficient to show any improper scheme or plan by Gonzales which might indicate a friendship or leaning toward any party or issue in the present case. *See Hinojosa*, 788 S.W.2d at 600–601.

■ Moreover, we hold that the rebuttal testimony of Trooper Cast=eneda was also an improper means of introducing the extraneous offense. The State cannot open the door to matters not otherwise admissible and then prove up the collateral events, unless the events themselves were independently admissible. *Alexander v. State*, 740 S.W.2d 749, 764 (Tex.Crim.App.1987). Whether Gonzales was truthful in her testimony that she had been cooperative in the investigation of the prior incident, was a collateral matter that did not allow the State to present rebuttal testimony concerning the investigation of the extraneous offense. In both instances, it was error for the trial court to allow testimony concerning the extraneous offense.

■ However, even though admission of testimony concerning the extraneous offense was error, we find that the error was harmless. *See Harris v. State*, 790 S.W.2d 568, 584–88 (Tex.Crim.App.1989); Tex. R.App.P. 81(b)(2). The record reveals no more than brief mention of the fact that Green had been investigated for the prior felony offense of failure to stop and render aid or "hit-and-run," and there was no evidence of the facts and circumstances surrounding the prior alleged offense. The offense of failure to stop and render aid, moreover, has no logical connection to the present charges of assault, nor does it tend to show violent behavior of the sort from which the jury might have improperly inferred that Green was prone to violence generally or that he acted in conformity therewith in the present assault. Finally, the trial court instructed the jury in paragraph 8 of the jury charge, as follows:

> You are instructed that if there is testimony before you in this case regarding

the Defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the identity of the Defendant, and the motive for testifying by the witness Donna Gonzales and for no other purpose.

Since no evidence at all was admitted to prove that Green committed the prior offense, the instruction effectively precluded the jury from considering the offense. However, even assuming that the jury did believe that Green committed the prior offense, the instruction specifically limited the jury's consideration such that it could not consider the prior offense in determining the central controversy, i.e., whether Green by his conduct intended to threaten Cardoza.

Overall, we find nothing in the record to suggest that a rational trier of fact might have reached a different result if the trial court had properly excluded testimony concerning the extraneous offense. *Harris*, 790 S.W.2d at 588. We conclude beyond a reasonable doubt that any such error made no contribution to the conviction or to the punishment. Tex.R.App.P. 81(b)(2). Green's second point of error is overruled.

■ By his fourth point of error, Green complains that the conviction is fatally defective because the trial court failed to include an instruction in its charge to the jury requiring a culpable mental state.

The abstract portion of the Court's charge did set out in paragraph 1 the elements of aggravated assault, including that it be committed "intentionally or knowingly." In addition, paragraph 3 defined when a person acts "intentionally" or "knowingly." However, application paragraphs 4 and 5 failed to include the mentally culpable state as a necessary element in order for the jury to find Green guilty of aggravated assault with a motor vehicle or knife, respectively. These paragraphs asked the jury to find Green guilty if it found merely that he "threaten[ed] imminent bodily injury to Marco Antonio Tapia Cardoza, the victim, by using a deadly weapon, to wit: [a motor vehicle (para. 4)/a knife (para. 5)], which was then and there in the manner of its use or intended use capable of causing serious bodily injury...." Neither paragraph required that the threats be made "intentionally or knowingly."

Prior to *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985), it was held that an application of the law to the facts of the case, in the trial court's charge to the jury, which omits the culpable mental state alleged in the charging instrument, will render that charge fundamentally defective. *Doyle v. State*, 631 S.W.2d 732, 737 (Tex.Crim.App.1982) (on rehearing).

■ In the present case, however, Green failed to object to the charge on this ground at trial. Therefore, in order to obtain a reversal, he must show egregious harm such that he was denied a fair and impartial trial as a result of the error. *See Almanza*, 686 S.W.2d at 171; *Dedesma v. State*, 806 S.W.2d 928, 933 (Tex.App.—Corpus Christi 1991, pet. ref'd). In determining whether egregious harm occurred, the error should be viewed in light of the entire jury charge, the state of the evidence (including contested issues and weight of probative evidence), the argument of counsel, and any other relevant information revealed by the record. *Almanza*, 686 S.W.2d at 171; *Dedesma*, 806 S.W.2d at 933. In the present case, a culpable mental state had already been defined for the jury and could have reference only to the charged offenses immediately following the definition in the jury charge. In light of the entire jury charge, the state of the evidence, and other relevant considerations, we do not find the present error to be egregious. Green's fourth point of error is overruled.

The judgments of the trial court are AFFIRMED.