NUMBER 13-07-00680-CR



 COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

VALDE GARCIA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 319th District Court


of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza
 

 A jury found appellant, Valde Garcia, guilty of aggravated robbery, a first-degree
felony, and assessed punishment at ten years' imprisonment in the Texas Department of
Criminal Justice-Institutional Division with no fine. See Tex. Penal Code Ann. § 29.03(a),
(b) (Vernon 2003). By four issues, Garcia contends that: (1) the evidence supporting his
conviction is legally and factually insufficient; (2) the trial court erred in refusing to charge
the jury on the lesser-included offenses of robbery, aggravated assault, and theft; (3) the
trial court erred in failing to include an instruction on self-defense or defense of property
in the jury charge; and (4) the State's use of Garcia's military service record to impeach his
testimony at trial created unfair prejudice. We affirm.

I. Background On July 12, 2007, Garcia was charged by indictment with the first-degree offense
of aggravated robbery. See Tex. Penal Code Ann. § 29.03(a), (b). Specifically, the
indictment provided the following:


 Valde Garcia, defendant, on or about June 20, 2007, in Nueces County,
Texas, did then and there, while in the course of committing theft of property
and with intent to obtain or maintain control of said property, intentionally or
knowingly threaten or place JOSEPH VELA, in fear of imminent bodily injury
or death, and the defendant did then and there use or exhibit a deadly
weapon, to wit: a knife . . . . 


 On October 22, 2007, Garcia's jury trial commenced. The State called four
witnesses in its case-in-chief--Joseph Vela, the victim, Deputies David Lindner and
Rolando Padilla, and Andrew Rich. Garcia and his mother, Martha Barrientes, testified on
behalf of the defense.

A. Joseph Vela's Testimony

 Vela testified that on June 20, 2007, he and his friend, Rich, both sixteen years old,
were driving home together in Rich's vehicle. Both Vela and Rich worked together on a
farm. Vela and Rich passed by Garcia's residence near Bishop, Texas, as they were
driving home, and Garcia gestured for them to stop. Vela and Rich had met Garcia
through their friendship with Garcia's brother, Manny. Vela had also lent Garcia money on
a previous occasion. Vela believed that the reason for the stop was that Garcia wished to
pay him back. Rich turned the vehicle around and parked in front of Garcia's house. Vela
noted that Garcia was accompanied by a friend named Mario.

 Garcia subsequently asked Vela to come over to where he was standing. Vela
testified that Garcia then became aggressive towards him and accused him of "messing
around" with Manny's girlfriend. As Garcia was interrogating him, Vela noticed that Garcia
had begun to get "teary-eyed," his arm muscles tensed up, and he took off his jewelry. 
Garcia then pushed Vela onto the hood of a car that was parked nearby. After pushing
Vela onto the hood of the car, Garcia instructed Vela to wait there while Garcia entered his
house. Once Garcia entered the house, Mario told Vela to run; however, Vela chose not
to do so because he did not believe that Rich could get his car started in time to flee from
Garcia. 

 After spending a couple of seconds inside his house, Garcia returned. Garcia
informed Vela and Rich that if they chose to run, he would catch them and kill them. He
also instructed Vela to come inside the house. Vela testified that he went inside Garcia's
house because he was forced to do so and that he "felt that he [Garcia] had power over
me." (1) Once inside, Garcia locked the dead bolt and the bottom lock of the door and
ordered Vela to go the another room, sit on the bed, and not make a sound. After leaving
the room for a brief period, Garcia returned with a "knife out on his right side." Vela noted
that the knife had a black handle and a silver blade. 

 Vela testified that Garcia forced him out of the bedroom and into the living room and
pushed him onto another bed. At this time, Garcia allegedly put the knife to Vela's neck
and asked Vela what he would do if Garcia slit his throat. Vela did not respond because
he was in fear for his life. Garcia asked Vela if he had any money on his person to which
Vela stated he did not. However, Vela informed Garcia that he had $100 at his house and
that he could go get it for Garcia. Garcia then let Vela get up, unlocked the door, and told
Vela to go outside. Garcia followed Vela outside with the knife still in hand. They both
proceeded to Rich's vehicle. Garcia asked Vela "if they have anything of value." Vela told
Garcia that all they had in the vehicle was corn from the farm they had worked on earlier
in the day. Garcia was displeased with Vela's answer and asked again. Garcia then
forcefully searched the front pockets of Vela's pants and found about $5. Garcia put the
$5 in his pocket and searched Vela's back pockets, where he found Vela's wallet and
bandana. As Garcia removed the bandana from Vela's back pocket, $7 or $8 fell to the
ground. When Vela reached to pick up the money off of the ground, Garcia instructed Vela
to give him the money. Garcia put the money in his pocket and began inspecting Vela's
wallet. Subsequently, Garcia put Vela's wallet in his pocket and ordered Vela and Rich to
return within five or ten minutes with the $100 that Vela had previously referenced. Garcia
then pushed Vela into Rich's vehicle and walked around to the driver's side of the vehicle
where Rich was seated. Garcia proceeded to ask Rich if he had anything of value to which
Rich replied that he only had corn. Now enraged, Garcia threatened to hunt down and kill
them and Vela's grandparents if they did not return with the $100. (2) With Vela crying and
Rich fearing for his life, they left for Vela's grandparents' house.

 Upon arriving at his grandparents' house, Vela told his grandfather what had
happened. Shortly thereafter, the police were called. Deputies Lindner and Padilla arrived
at Vela's grandparents' house to inquire about the incident. 



B. Deputy David Lindner's Testimony


 Lindner testified that he is a Deputy Constable for Nueces County, Precinct 5, but
that at the time the incident transpired, he was working for the City of Bishop Police
Department. Lindner first became aware of the incident when his partner, Padilla, received
a call on his radio from Phillip Rich, a Nueces County Sheriff's Deputy. (3) Lindner and
Padilla proceeded to Vela's grandparents' house. Upon arriving, Lindner and Padilla
interviewed Vela about the incident. Lindner noted that Vela was under a lot of stress and
that his eyes were very red and watery. Vela then told Lindner and Padilla about the
incident. Vela was very descriptive about the items taken and the items located in Garcia's
residence. Vela also noted that Garcia did not act like he was joking when he was
demanding the money. After interviewing Vela, Lindner and Padilla went over to Garcia's
residence. Garcia was not there, so the deputies left a message with Barrientes, who was
apparently living with Garcia at the house. About five minutes later, Lindner received a call
from Barrientes notifying him that Garcia had returned; therefore, Lindner went back to
Garcia's house. Lindner noticed that Garcia was dressed exactly as Vela had described. 
Later, Lindner read Garcia his Miranda rights and began to describe the incident as Vela
had previously told him. See generally Miranda v. Arizona, 384 U.S. 436 (1966). Lindner
testified that at no point did Garcia deny that the incident took place. (4) Garcia merely stated
that the whole incident was a misunderstanding and that he and Vela were "just playing
around." After Lindner asked about Vela's wallet, Garcia stated that Vela had left the
wallet inside the house on top of a bed. Lindner then asked about the money that Vela
alleged Garcia had stolen and about the knife; Garcia denied any knowledge of the money
and denied owning a knife. After placing Garcia under arrest, Lindner conducted a search
of the residence. Lindner found Vela's wallet on top of a bed but did not find a knife in
either the living room or the kitchen of Garcia's house.

 The next day, Vela produced a written statement describing the incident. Lindner
witnessed the statement. Rich produced a written statement a few days later which 
Lindner also witnessed. In compiling his police report, Lindner read both written
statements provided by Vela and Rich and determined that the statements were
consistent. (5) Lindner also testified that based on his training and experience, a knife is a
weapon that could cause death or serious bodily injury.


C. Deputy Rolando Padilla's Testimony


 Padilla testified that when he first responded to the disturbance call, he noticed that
Lindner had already arrived on the scene and was taking Vela's statement. Padilla noticed
that Vela was visibly upset and shaking. Padilla noted that he assisted Lindner in
searching Garcia's house, but neither law enforcement officer found a knife. However,
Lindner and Padilla did find Vela's wallet lying on a bed in Garcia's house.

D. Andrew Rich's Testimony


 Rich corroborated Vela's testimony regarding the encounter with Garcia. 
Specifically, Rich noted that Vela began to cry out of fear when Garcia instructed Vela to
come inside the house and told him not to run away. Rich testified that Garcia ordered him
to stay where he was and to turn the car off prior to entering the house with Vela. Garcia
threatened Rich that if he failed to comply, he would kill him. Rich testified that as a result
of Garcia's threats, he was fearful for his life. Rich stated that at no point in time was
Garcia acting in a joking manner; instead, Garcia was angry and serious. Once Vela
returned from Garcia's house, Rich noticed that Vela was "crying and really scared." As
Garcia accompanied Vela to Rich's car, Rich saw that Garcia was holding a knife with a
black handle and silver blade. Rich believed that the knife was capable of hurting him or
even killing him. Later, at the urging of Lindner, Rich produced a written statement about
the incident. Rich admitted that he did not include every detail in the written statement
because Lindner had only told him to write a "summary." 

E. Garcia's Testimony


 Garcia testified that at the time of trial, he was twenty-two years old and that he was
employed doing yard work and working "at the grains" in Bishop. Garcia noted that he did
not wave over Vela and Rich but that Vela and Rich stopped by on their own accord to ask
where Mario was. According to Garcia, both Vela and Rich exited Rich's vehicle and the
three began talking. As they were talking, Garcia and Vela began "horseplaying." Garcia
testified that Vela pushed him and that he pushed Vela back, but that "it wasn't nothing
really serious." However, Garcia noted that the pushing eventually became serious. 
Garcia alleged that Vela continually provoked him and that he took off his jewelry because
the two were "horseplaying." Garcia admitted that he did push Vela and that Vela landed
on top of the nearby car. Garcia denied: (1) asking Vela for money; (2) threatening the
lives of Vela or Rich; (3) forcing Vela inside his house; (4) threatening to slit Vela's throat;
or (5) owning a knife. Essentially, Garcia denied committing any offense. Garcia claimed
that Vela's story was a fabrication to frame him for this offense. Garcia testified that Vela
left his wallet at his place and that it was not his intent to steal Vela's wallet. Because he
was employed at the time, Garcia theorized that he had no need for Vela's money. Garcia
noted that when the police arrived, he "was down the street." (6) When the police returned
to his house a second time, Garcia was waiting for them. Upon questioning, Garcia
informed Lindner and Padilla about Vela's wallet and consented to a search of his house
for the knife.

 On cross-examination, the State asked Garcia if he had been previously convicted
of a crime of moral turpitude. In response to this question, Garcia stated that he had "been
convicted of unauthorized absence from the Service." The State then questioned Garcia
about his service in the Marines. Garcia admitted that he had been discharged from the
Marines for bad conduct because he was absent without leave ("AWOL"). With respect
to Garcia's discharge, the following exchange occurred:


 Q [The State]. Okay. You just told the ladies and gentlemen of the jury
the reason that you didn't tell the deputy, or--I'm
sorry--he was an officer at the time--Officer Lindner
about the wallet, about the bracelet, about everybody
taking off their jewelry and horseplaying, blah, blah,
blah, blah, blah, that you didn't tell him about that was
because you knew you were going to catch a case for
agg[ravated] robbery? 

 

 A [Garcia]. No, I had no idea. I had never been--that's the
only--the only time I've been in trouble is with the
military. That was it. I didn't know I was going to be in
trouble for no aggravated robbery.

 

 Q. But there have been several times with the military,
haven't there; it wasn't just the AWOL, was it?

 

 A. It was AWOL and the use of cocaine, and that was it.

 

 Q. Isn't there one other one?

 

 A. No, ma'am. That's all there is. That's the only charge
I ever got.


The State then introduced a copy of Garcia's military record over objections made by
Garcia that the records were not made available in discovery and were irrelevant and more
prejudicial than probative. (7) See Tex. R. Evid. 403. The trial court admitted Garcia's military
records under the premise that Garcia had "opened the door" and that the documents had
been authenticated. Garcia's military record included a report with the following notation
referencing a December 10, 2004 offense: "Counsel this date concerning my illegal drug
involvement, specifically indicating trafficking, possession, usage and positive urinalysis
for cocaine." Garcia admitted that he used cocaine and that he had signed the report, but
that the military had doctored the document to include the trafficking allegation. Garcia
also testified that (1) Mario was present during the alleged altercation and during Lindner's
questioning, and (2) Mario did not ever state that Vela and Garcia were just "horseplaying"
or that this was just a "misunderstanding." 

F. Martha Barrientes's Testimony

 

 Barrientes testified that at the time of the incident, Garcia was employed and did not
need any money. Barrientes also recognized Vela and Rich as Manny's friends and that
Vela and Rich had visited Garcia's house on other occasions. Barrientes denied ever
seeing Garcia with a knife; however, Barrientes admitted that she does not keep a close
eye on what Garcia does on a daily basis.

II. Legal and Factual Sufficiency


 In his first issue, Garcia contends that the evidence supporting his conviction is
legally and factually insufficient. The State asserts that the evidence supporting Garcia's
conviction was legally sufficient because, based on the testimony provided by Vela and
Rich, a rational trier of fact could have found the elements of aggravated robbery beyond
a reasonable doubt. The State also argues that the jury's verdict is not clearly wrong or
manifestly unjust. 

A. Standard of Review


 In a legal sufficiency review, we view the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307,
318-19 (1979); Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). The trier
of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given
to testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Jackson, 443
U.S. at 318-19; Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.]
2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, whether
circumstantial or direct, nor do we substitute our own judgment for that of the trier of fact. 
Mosley v. State, 141 S.W.3d 816, 821 (Tex. App.-Texarkana 2004, pet. ref'd); Beckham,
29 S.W.3d at 151. Instead, we consider whether the jury reached a rational decision. 
Beckham, 29 S.W.3d at 151.

 Each fact need not point directly and independently to the guilt of the appellant, as
long as the cumulative force of all the incriminating circumstances is sufficient to support
the conviction. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Barnes
v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993); Alexander v. State, 740 S.W.2d 749, 758 (Tex. Crim. App.
1987)). Circumstantial evidence is as probative as direct evidence in establishing the guilt
of an actor and alone can be sufficient to establish guilt. Guevara v. State, 152 S.W.3d
45, 49 (Tex. Crim. App. 2004). On appeal, both circumstantial and direct evidence cases
are examined using the same standard of review. Id.

 In a factual sufficiency review, we review the evidence in a neutral light to determine
whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly
unjust. Watson, 204 S.W.3d at 414-15. After considering all of the evidence in the record
related to appellant's sufficiency challenge, we compare the evidence weighed by the jury
that tends to prove the elemental fact in dispute with the evidence that tends to disprove
it. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997) (en banc). This Court
will not reverse the jury's verdict unless we can say with some objective basis in the record
that the great weight and preponderance of the evidence contradicts the verdict. Watson,
204 S.W.3d at 415.

 We measure the sufficiency of the evidence by the elements of the offense as
defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002,
pet. ref'd). "Such a charge would accurately set out the law, would be authorized by the
indictment, and would not unnecessarily increase the State's burden of proof." Malik, 953
S.W.2d at 240. A person commits the offense of aggravated robbery "if he commits
robbery as defined in Section 29.02, and he . . . uses or exhibits a deadly weapon . . . ." (8) 
Tex. Penal Code Ann. § 29.03(a)(2). 



B. Discussion


 In arguing that the evidence supporting his conviction is legally and factually
insufficient, Garcia states that "the evidence did not show a conscious objective or desire
by Garcia to harm Vela but an objective by Garcia to defend himself against Vela's
advances." Garcia further states that the State failed to prove beyond a reasonable doubt
that he committed an aggravated robbery because there was inconsistent testimony
whether a knife existed at all and because Vela and Garcia were merely "horseplaying."

 We construe Garcia's first argument as an attack on the intent element of the
offense. Intent is a question of fact that is within the sole purview of the jury; the jury may
rely on its collective common sense and apply common knowledge and experience. Brown
v. State, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). Intent may be inferred from the
circumstantial evidence surrounding the incident including the acts, words, and conduct of
the accused. Guevara, 152 S.W.3d at 50. Due deference must be accorded to the jury
regarding the weight and credibiltiy of the evidence. See Jones v. State, 944 S.W.2d 642,
649 (Tex. Crim. App. 1996). 

 Vela testified that Garcia (1) repeatedly threatened Rich and him, (2) displayed a
knife, and (3) stole his money and his wallet, thereby addressing each of the essential
elements for the offense of aggravated robbery. See Tex. Penal Code Ann. § 29.03(a). 
Rich corroborated Vela's testimony with respect to Garcia's threats, his angry demeanor,
and the existence of the knife. Rich also noted that he observed Vela crying prior to
entering and after exiting Garcia's house, indicating that Vela was fearful of Garcia. Both
Vela and Rich testified that Garcia's actions made them fearful of their lives and safety. 
On the other hand, Garcia denied all of the allegations made by Vela and Rich in their
testimony and painted himself as the victim of Vela's aggressive advances. However,
"[w]hen the record supports conflicting inferences, we presume that the factfinder resolved
the conflicts in favor of the prosecution and therefore defer to that determination." Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 326). 
Based on the testimony, the jury was justified in inferring that Garcia intended to commit
the offense of aggravated robbery. See Tex. Penal Code Ann. § 29.03(a)(2). 

 Garcia's second argument, that he and Vela were merely "horseplaying," is not
supported by the record. "Appellate courts should afford almost complete deference to a
jury's decision when that decision is based upon an evaluation of credibility." Lancon v.
State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). "The jury is in the best position to
judge the credibility of a witness because it is present to hear the testimony, as opposed
to an appellate court who relies on the cold record." Id. The jury may choose to believe
some testimony and disbelieve other testimony. Id. at 707. 

 Both Vela and Rich testified that Garcia threatened them and that Garcia stole
money from Vela using a knife. Furthermore, both Vela and Rich testified that they feared
for their lives, and neither believed that Garcia was merely engaging in "horseplay." In
arriving at its verdict, the jury clearly believed Vela's testimony to be credible while
concluding that Garcia's testimony was not. We must defer to the jury's determination. 
See Clayton, 235 S.W.3d at 778.

 We disagree with Garcia's third argument that the existence of inconsistent
testimony regarding the existence of the knife rendered the evidence supporting his
conviction legally insufficient. Once again, both Vela and Rich noted that Garcia
brandished a knife in committing the robbery; they both identified the knife as having a
black handle and a silver blade. Conversely, both Garcia and Barrientes denied that
Garcia ever possessed a knife. 

 However, this Court has held that contradictory testimony from witnesses does not
render the evidence insufficient. See Davila v. State, 147 S.W.3d 572, 575 (Tex.
App.-Corpus Christi 2004, pet. ref'd) (citing Mercado v. State, 695 S.W.2d 25, 29 (Tex.
App.-Corpus Christi 1985), aff'd, 718 S.W.2d 291 (Tex. Crim. App. 1986)). The jury was
justified in believing the testimony of Vela and Rich over that of Garcia with respect to the
existence of the knife. (9) See Clayton, 235 S.W.3d at 778; see also Hunter v. State, Nos.
01-00-00722-CR & 01-00-00726-CR, 2001 Tex. App. LEXIS 4532, at **4-6 (Tex.
App.-Houston [1st Dist.] July 5, 2001, no pet.) (mem. op., not designated for publication)
(affirming a conviction for aggravated robbery even though the firearm used in the
commission of the offense was never found); Jeffery v. State, No. C14-84-329-CR, 1985
Tex. App. LEXIS 6581, at *3 (Tex. App.-Houston [14th Dist.] Apr. 25, 1985, no pet.) (mem.
op., not designated for publication) (upholding a conviction for aggravated robbery even
though the deadly weapon was not found). In addition, Lindner testified that the knife that
Vela and Rich identified was capable of causing death or serious injury. See Davidson v.
State, 602 S.W.2d 272, 274 (Tex. Crim. App. 1980) (holding that simply a description of
a knife by size and shape is not enough evidence to support a determination that the knife
was a deadly weapon without evidence of the manner of its use and capacity to produce
death or serious bodily injury). (10) Based on the foregoing, we conclude that the cumulative
force of all the incriminating circumstances is sufficient to support Garcia's conviction for
aggravated robbery. See Hooper, 214 S.W.3d at 13; see also Guevara, 152 S.W.3d at 49.

 In his appellate brief, Garcia does not demonstrate how the evidence supporting his
conviction was factually insufficient. See Tex. R. App. P. 38.1. In any event, we cannot
say, based on our review of the record, that the evidence supporting Garcia's conviction
is so weak that the verdict was clearly wrong or manifestly unjust. See Watson, 204
S.W.3d at 414-15. Accordingly, we overrule Garcia's first issue on appeal. 

III. Lesser-Included Offenses


 In his second issue, Garcia argues that the trial court erred in refusing to include an
instruction for the lesser-included offenses of robbery, aggravated assault, and theft in the
jury charge. (11)
 Garcia asserts that the record contains evidence "that would have permitedt
[sic] a jury rationally to find appellant guilty (if at all) of the lesser offenses of robbery,
aggravated assault[,] or theft." Conversely, the State asserts that there was no evidence
from which a rational jury could have acquitted Garcia of aggravated robbery while
convicting him of the lesser-included offenses of robbery, aggravated assault, or theft. In
particular, the State notes that because Garcia's theory at trial was that he did not commit
any offense and because there was no evidence demonstrating that Garcia was only guilty
of a lesser-included offense, a charge on a lesser-included offense was not required. 

A. Standard of Review


 A defendant is entitled to an instruction on a lesser-included offense if (1) the lesser
offense is a lesser-included offense of the charged offense, and (2) there is some evidence
in the record that would permit a jury rationally to find that if the defendant is guilty, he is
guilty only of the lesser offense. Guzman v. State, 188 S.W.3d 185, 188 (Tex. Crim. App.
2006). The court of criminal appeals recently analyzed article 37.09 of the code of criminal
procedure and clarified the two-step analysis used in determining if a defendant is entitled
to an instruction on a lesser-included offense. Hall v. State, 225 S.W.3d 524, 534-37 (Tex.
Crim. App. 2007). 

 In the first step, the elements of the offense as alleged in the indictment are
compared to the statutory elements of the potential lesser-included offense. Id. at 535-36. 
This determination is a question of law and does not depend on the evidence adduced at
the trial. Id. at 535. If the greater offense may be committed in more than one manner,
the manner alleged will determine the availability of lesser-included offenses. Id. at 531.

 If the first step is satisfied, a reviewing court then proceeds to determine if there is
some evidence that would permit a rational jury to find that the defendant is guilty of the
lesser offense, but not guilty of the greater. Id. at 536. Anything more than a scintilla of
evidence may be sufficient to entitle a defendant to a charge on the lesser offense. Id. "[I]t
is not enough that the jury may disbelieve crucial evidence pertaining to the greater
offense, but rather, there must be some evidence directly germane to the lesser-included
offense for the finder of fact to consider before an instruction on a lesser-included offense
is warranted." Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003). We review
all evidence presented at trial to make this determination. Rousseau v. State, 855 S.W.2d
666, 673 (Tex. Crim. App. 1993). If the evidence raises the issue of a lesser-included
offense, a jury charge must be given based on that evidence, "'whether produced by the
State or the defendant and whether it be strong, weak, unimpeached, or contradicted.'" 
Id. at 672 (quoting Bell v. State, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985)).

B. Discussion


 1. Jury Instruction on Aggravated Assault and Theft


 After both sides had rested, the trial court facilitated a charge conference in which
the following exchange took place:


 MS. NEMER [Prosecutor]: Basically, it's just a standard jury charge,
just so you know. I'll call Ms. Graham
[Garcia's trial counsel], and I'll let her, of
course, see it. It's prepared by the
District Attorney's office with him
testifying, of course.

 

 Originally, I thought there might be
some lesser includeds of a robbery and
an aggravated assault. I don't believe
that that's come through. I think it's an all
or nothing on the aggravated robbery. . . 

 

 MS. GRAHAM: Well, I think there's a lesser included of
robbery in there, maybe not aggravated
assault, but--

 

 MS. NEMER: I don't honestly see how there's a
predicate. He's saying he didn't do it. All
the witnesses are saying that there was a
knife. There has to be some evidence
that, if he's guilty, he's only guilty of
robbery. I don't see any evidence to that,
Your Honor, do you?

 

 MS. GRAHAM: Well, I think from the facts that we need
to determine if it's an aggravated robbery
or a regular robbery.

 . . . .

 

 THE COURT: I'm inclined to not to include a lesser
included at this time . . . .

 

 . . . .

 

 MS. GRAHAM: Well, I mean there is evidence in here
where the jury can make a decision on
the finding of robbery. I mean, if they
decide that there was no knife.

 

 . . . .

 

 MS. NEMER: --there has to be--I can bring you the
case--I'm sure Your Honor doesn't need
the case law. You've done enough jury
charges. Your Honor knows that in order
for him to be--a lesser included to be
included, there must be some evidence
that if he's guilty of anything, he's only
guilty of that.


 There has only been testimony that
a knife was used. There is--you don't
just automatically going [sic] to lesser
included because someone might think
something. It has--there has to actually
be evidence that there was no knife. Not
one person has gotten up there and said
there was no knife, Judge. She's wrong.

 

 MS. GRAHAM: There's evidence of the theft and
evidence of an assault, but the issue of
the knife can be debated. That's why I
say there's a lesser included of robbery
included--that could be included in the
jury charge.

 

 . . . .

 

 THE COURT: Yeah. No, I'm not going to, I'm not going
to include a lesser included offense.


 Garcia's trial counsel later re-urged her objection to the trial court's refusal to include
an instruction on the alleged lesser-included offense of robbery. Garcia's trial counsel did
not object to any other aspects of the jury charge and did not specifically allege that the
jury should be charged on aggravated assault and theft. We conclude that Garcia failed
to preserve his argument with respect to the trial court's refusal to include an instruction
on aggravated assault and theft. See Tex. R. App. P. 33.1; see also Vasquez v. State, 919
S.W.2d 433, 434 (Tex. Crim. App. 1996) (en banc) (holding that "[i]n order to preserve
error relating to the jury charge[,] there must either be an objection or a requested charge") 
(citing Boles v. State, 598 S.W.2d 274, 278 (Tex. Crim. App. 1980)). 

 2. Jury Instruction on Robbery

 Garcia was indicted for aggravated robbery and counsel for Garcia argued for a jury
instruction on robbery at the charge conference. The parties do not dispute that robbery
is a lesser-included offense of aggravated robbery, thus satisfying the first prong of the Hall
test. See 225 S.W.3d at 535-36; see also Neighbors v. State, No. 2-07-176-CR, 2008 Tex.
App. LEXIS 4467, at *14 (Tex. App.-Fort Worth June 12, 2008, pet. ref'd) (mem. op., not
designated for publication) (concluding that robbery is a lesser-included offense of
aggravated robbery) (citing Ex parte Walton, 626 S.W.2d 528, 530 (Tex. Crim. App. 1981);
Russell v. State, 804 S.W.2d 287, 289 (Tex. App.-Fort Worth 1991, no pet.)). We must
next determine if there is some evidence adduced at trial demonstrating that if Garcia is
guilty, he is guilty of only robbery. See Hall, 225 S.W.3d at 536. 

 Garcia testified at trial that he had not committed any offense and denied the
existence of the knife. The court of criminal appeals has held that "[a] defendant's own
testimony that he committed no offense, or testimony which otherwise shows that no
offense occurred at all, is not adequate to raise the issue of a lesser-included offense." 
Lofton v. State, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001). Moreover, in Bignall v. State,
the court of criminal appeals concluded that "if a defendant either presents evidence that
he committed no offense or presents no evidence, and there is no evidence otherwise
showing that he is guilty only of a lesser-included offense, then a charge on a lesser-included offense is not required." 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). 

 The jury, the sole judge of the credibility of witnesses and the weight afforded to
their testimony, see Beckham, 29 S.W.3d at 151, concluded that the testimony of Vela and
Rich was more credible than Garcia's and that a knife existed. If the jury did not believe
that Garcia brandished a knife in the commission of the offense, then it would have
acquitted Garcia. In addition, counsel for Garcia repeatedly argued that the existence of
the knife was up for debate and this necessitated a jury instruction on robbery. However,
as previously noted, "it is not enough that the jury may disbelieve crucial evidence [i.e., the
existence of the knife] pertaining to the greater offense, but rather, there must be some
evidence directly germane to the lesser-included offense . . . ." Hampton, 109 S.W.3d at
441. Even assuming that the existence of the knife was up for debate, that was not
enough to warrant a jury instruction on a lesser-included offense. See id. Based on our
review of the record, Garcia did not proffer any evidence directly germane to the lesser-included offense of robbery. We therefore conclude that the evidence adduced at trial
does not support Garcia's contention on appeal that he was only guilty of robbery rather
than aggravated robbery, and that the trial court did not err in refusing to include an
instruction on robbery in the jury charge. See id.; see also Hall, 225 S.W.3d at 536. 
Garcia's second issue is overruled. 

IV. Self-Defense and Defense of Property


 In his third issue, Garcia argues that the trial court erred in refusing to include an
instruction on self-defense and defense of property in the jury charge. The State contends
that the trial court did not err in refusing to include instructions on self-defense and defense
of property because: (1) Garcia denied that any criminal act took place; (2) a robber has
no right of self-defense against his victim; (3) there was no evidence presented that Vela
used deadly force against Garcia; (4) Garcia consented to the force exacted by Vela; (5)
the use of force against another is not justified if the actor provoked the other's use of
unlawful force; (6) Garcia did not properly request such an instruction or object to the
absence of the instructions; and (7) Garcia failed to present evidence raising the issue. 

A. Standard of Review


 An accused is entitled to an instruction on any defensive issue raised by the
evidence, whether that evidence is weak or strong, unimpeached or contradicted, and
regardless of what the trial court may think about the credibility of the evidence. Granger
v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); Hudson v. State, 145 S.W.3d 323, 324-25 (Tex. App.-Fort Worth 2004, pet. ref'd). But when the evidence fails to raise a
defensive issue, the trial court commits no error in refusing a requested instruction. Muniz
v. State, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993); Hudson, 145 S.W.3d at 325.

B. Discussion


 At the jury charge conference, the following exchange occurred:


 MS. GRAHAM: And, Your Honor, there's evidence that he said
that he was provoked. Can we include a--

 

 THE COURT: A what.

 

 MS. GRAHAM: --self-defense?

 

 MS. NEMER: Absolutely not. There's no evidence that he was
provoked.

 

 . . . .

 

 THE COURT: I'm not going to--I guess your request is denied
or your motion is denied.


 With respect to a defendant's entitlement to a self-defense instruction, (12) the Austin
Court of Appeals noted the following: 

 Self-defense, like other chapter nine defenses, justifies conduct that
would otherwise be criminal. Young v. State, 991 S.W.2d 835, 838 (Tex.
Crim. App. 1999) (necessity); Wallace v. State, 75 S.W.3d 576, 587 (Tex.
App.-Texarkana 2002) (self-defense), aff'd, 106 S.W.3d 103, 109 (Tex.
Crim. App. 2003). In other words, the defendant must "admit" violating the
statute under which he is being tried, then offer a statutory justification for his
otherwise criminal conduct. Young, 991 S.W.2d at 838. Thus, a defendant
is not entitled to a jury instruction on self-defense if, through his own
testimony or the testimony of others, he claims that he did not perform the
assaultive acts alleged, or that he did not have the requisite culpable mental
state, or both. Ex parte Nailor, 149 S.W.3d 125, 134 (Tex. Crim. App. 2004);
East v. State, 76 S.W.3d 736, 738 (Tex. App.-Waco 2002, no pet.); Wallace,
75 S.W.3d at 587; Gilmore v. State, 44 S.W.3d 92, 97 (Tex. App.-Beaumont
2001, pet. ref'd); Anderson v. State, 11 S.W.3d 369, 372 (Tex.
App.-Houston [1st Dist.] 2000, pet. ref'd). . . . In each of these cases, all the
defensive testimony was to the effect that the defendant did not commit the
alleged acts, and the defendant was thus not entitled to a self-defense
instruction because there was no evidence that he acted in self-defense.


VanBrackle v. State, 179 S.W.3d 708, 715 (Tex. App.-Austin 2005, no pet.) (emphasis in
original). Moreover, the court of criminal appeals has held that a robber has no right of
self-defense against his victim. See Westley v. State, 754 S.W.2d 224, 230 (Tex. Crim.
App. 1988). In the present case, Garcia contended that he did not commit any offense and
that he and Vela were merely "horseplaying." Because there was no evidence adduced
at trial raising self-defense and because Garcia denied committing any offense, we
conclude that the trial court did not err in refusing to instruct the jury about self-defense. 
See Westley, 754 S.W.2d at 230; VanBrackle, 179 S.W.3d at 715; see also Muniz, 851
S.W.2d at 254; Hudson, 145 S.W.3d at 325. With respect to his defense of property
contention, (13) Garcia has provided neither argument nor authority in support of his
contention; therefore, this argument is inadequately briefed. See Tex. R. App. P. 38.1. In
any event, the refusal to instruct the jury on defense of property is not error when there is
no evidence of a defendant's reasonable belief that force was necessary to recover his
property. MacDonald v. State, 761 S.W.2d 56, 61 (Tex. App.-Houston [14th Dist.] 1988,
pet. ref'd). The evidence does not demonstrate that Garcia's actions towards Vela and
Rich amounted to a defense of his property. In fact, Garcia did not testify that either Vela
or Rich intended to deprive him of his property. Therefore, we conclude that the trial court
did not err in refusing to include an instruction on defense of property. Accordingly, we
overrule Garcia's third issue.

V. The State's Usage of Garcia's Military Records


 In his fourth issue, Garcia argues that the State's usage of his military service record
substantially prejudiced his case and that the records were improperly used to prove
conformity of his conduct. See Tex. R. Evid. 403, 404(b). The State counters by arguing
that Garcia's military records were properly used to impeach his testimony that allegedly
created a false impression about his prior trouble with military authority. Arguing that this
"case was essentially a swearing match between the victim and Appellant" and the
"outcome hinged on credibility assessments," the State asserted that Garcia's military
records were relevant and admissible because he opened the door when he "represented
to the jury that the only time he had previously been in trouble was when he was in the
military and that it was only for cocaine use and being AWOL . . . ." 

A. Standard of Review


 The admission of evidence is reviewed under an abuse of discretion standard. 
Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990) (op. on reh'g). As
long as the trial court's ruling was within the "zone of reasonable disagreement," there is
no abuse of discretion, and we must uphold the trial court's ruling. Id. at 381. Relevant
evidence may be excluded if its probative value is substantially outweighed by its
prejudicial effect. Tex. R. Evid. 403. However, rule 403 favors the admission of relevant
evidence and carries a presumption that relevant evidence will be more probative than
prejudicial. Shuffield v. State, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In conducting
a rule 403 analysis, we may consider, among other things: (1) how probative the evidence
is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless
indelible way; (3) the time the proponent needs to develop the evidence; and (4) the
proponent's need for the evidence. Id. 

 However, under the opened-door doctrine, a defendant cannot intentionally broach
a subject and then complain when the subject is subsequently pursued by the State. 
Mares v. State, 52 S.W.3d 886, 890 (Tex. App.-San Antonio 2001, pet. ref'd); see Delk v.
State, 855 S.W.2d 700, 705 (Tex. Crim. App. 1993), overruled on other grounds by Ex
parte Moreno, 245 S.W.3d 419, 425 (Tex. Crim. App. 2008) ("Where the witness creates
a false impression of law abiding behavior, he 'opens the door' on his otherwise irrelevant
past criminal history and opposing counsel may expose the falsehood."); Green v. State,
831 S.W.2d 89, 94 (Tex. App.-Corpus Christi 1992, no pet.) ("When the defendant 'opens
the door' on an issue by attempting to present an incomplete picture of an incident, the
State is permitted to complete the picture by presenting evidence that would otherwise
have been inadmissible."). 

B. Discussion


 We begin by noting that Garcia's trial counsel only objected to the State's
introduction of Garcia's military records under rule 403. Tex. R. Evid. 403. Specifically,
Garcia's trial counsel argued that the prejudicial effect of introducing the records
outweighed its probativeness. See id. On appeal, Garcia argues that the State improperly
used the military records to prove conformity of his conduct. See Tex. R. Evid. 404(b). 
However, Garcia's rule 404(b) objection was never made to the trial court. We therefore
conclude that Garcia has not preserved this contention for appeal. See Tex. R. App. P.
33.1 (providing that "[a]s a prerequisite to presenting a complaint for appellate review, the
record must show that . . . the complaint was made to the trial court by a timely request,
objection, or motion" stating the specific grounds for the desired ruling if the specific
grounds are not apparent from the context); see also Montgomery, 810 S.W.2d at 388
(holding that an objection under both rules 403 and 404(b) is required to preserve error
regarding the admission of evidence of an extraneous offense); Zayas v. State, No. 13-04-532-CR, 2005 Tex. App. LEXIS 9693, at **5-6 (Tex. App.-Corpus Christi Nov. 17, 2005,
no pet.) (mem. op., not designated for publication) (concluding that the failure to
specifically make a rule 403 or rule 404(b) objection to the trial court in a timely manner
does not preserve error). As a result, we will focus on Garcia's rule 403 objection. 

 With respect to his rule 403 objection, Garcia does not argue on appeal exactly how
the admission of his military records constituted an unfair prejudice. Garcia only states that
"the evidence still created unfair prejudice when allowed to be entered as business records
over defense objections." We conclude that this contention was inadequately briefed. See
Tex. R. App. P. 38.1.

 Even assuming that Garcia had adequately briefed this contention, the record
reflects that Garcia painted an inaccurate picture as to his disciplinary history while in the
military. As previously mentioned, Garcia testified that he was only disciplined for going
AWOL and for using cocaine. However, Garcia's military records indicated that he had
previously engaged in drug trafficking as well. Because Garcia created a false impression
of his law abiding behavior, he "opened the door" and the State was permitted to impeach
him with his military records. (14) See Mares, 52 S.W.3d at 890; see also Delk, 855 S.W.2d
at 705; Green, 831 S.W.2d at 94. Furthermore, at no point did Garcia request that the trial
court issue a limiting instruction to the jury to consider the military records for impeachment
purposes only. We conclude that the trial court did not abuse its discretion in admitting
Garcia's military records because Garcia "opened the door." Accordingly, Garcia's fourth
issue is overruled. 

VI. Conclusion


 Having overruled all of Garcia's issues, we affirm the judgment of the trial court.




 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this the 8th day of January, 2009. 

 
1. In corroborating Vela's testimony, Rich noted that: "He [Garcia] was forcing [Vela], and he was
behind him. He, [Vela], had nowhere to go, except for in the house."
2. Vela testified that he lived with his grandparents at their house.
3. Nueces County Deputy Phillip Rich is Andrew Rich's uncle. Andrew noted that he had called Phillip
on his cell phone to tell him about the incident.
4. Mario was also present during Lindner's questioning of Garcia, and at no point did Mario deny that
the events in question had transpired.
5. At trial, Garcia argued that the statements produced by Vela and Rich were inconsistent because
Rich had failed to mention some details of the incident.
6. On cross-examination, the State questioned Garcia about whether he had disposed of the knife
when he "was down the street." However, Garcia insisted that there was no knife. Garcia did not specifically
address what he was doing "down the street."
7. In response to Garcia's objection that his military records were not provided during discovery, the
State argued that it has an open door policy and that Garcia had ample opportunity to access these records. 
The State also asserted that counsel for Garcia had looked through all of the State's documents on the day
before trial. Garcia did not re-assert this objection on appeal.
8. As defined in section 29.02 of the penal code, a person commits the offense of robbery "if, in the
course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the
property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or
death." Tex. Penal Code Ann. § 29.02(a)(2) (Vernon 2003). Chapter 31 of the penal code provides that a
person commits theft "if he unlawfully appropriates property with intent to deprive the owner of the property." 
Id. § 31.03(a) (Vernon Supp. 2008).
9. Texas courts have held that in determining whether a knife was used as a deadly weapon within the
context of an aggravated robbery, we must consider "the manner of the knife's use or intended use, its size
and shape, and its capacity to produce serious bodily injury" and that "[t]estimony pertaining to the size of the
blade, the blade's appearance of sharpness, the use of any brandishing motions, or the victim's fear of serious
bodily injury or death, can all be offered to establish that a knife is a deadly weapon." See Davidson v. State,
602 S.W.2d 272, 273 (Tex. Crim. App. 1980); Hicks v. State, 837 S.W.2d 686, 690 (Tex. App.-Houston [1st
Dist.] 1992, no pet.).
10. In Davidson, appellant was convicted of aggravated robbery for stealing film from a store and
threatening employees with a knife. 602 S.W.2d at 273. The knife was never found. Id. The court of criminal
appeals reversed appellant's conviction for aggravated robbery because the State failed to proffer evidence
as to the knife's manner of use and capacity to produce death or serious bodily injury. Id. at 274. However,
appellant's conviction was not overturned on the basis of the knife not being found. See id. At trial, Garcia
merely argued that there was uncertainty as to whether a knife existed at all. 
11. Article 37.09 of the code of criminal procedure provides that an offense is a lesser-included offense
if:


 (1) it is established by proof of the same or less than all the facts required to establish the
commission of the offense charged;

 

 (2) it differs from the offense charged only in the respect that a less serious injury or risk of
injury to the same person, property, or public interest suffices to establish its commission;

 

 (3) it differs from the offense charged only in the respect that a less culpable mental state
suffices to establish its commission; or

 

 (4) it consists of an attempt to commit the offense charged or an otherwise included offense.


Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006). 

12. Section 9.31 of the penal code provides that "a person is justified in using force against another
when and to the degree he reasonably believes the force is immediately necessary to protect himself against
the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a) (Vernon Supp. 2008). 
Subsection (b) also provides that the use of force is not justified "in response to verbal provocation alone." 
Id. § 9.31(b)(1).
13. Section 9.41 of the penal code provides that a person is justified in using force in protection of his
own property "when and to the degree the actor reasonably believes the force is immediately necessary to
prevent or terminate the other's trespass on the land or unlawful interference with the property." Id. § 9.41(a)
(Vernon 2003). 
14. We need not address whether the military records were properly admitted under the business
records exception to the hearsay rule because Texas courts allow the State to impeach a witness with
evidence that would otherwise be inadmissible once the witness "opens the door." See Green v. State, 831
S.W.2d 89, 94 (Tex. App.-Corpus Christi 1992, no pet.). Moreover, Garcia only challenged the admission
of the military records on rule 403 grounds. See Tex. R. Evid. 403.