NUMBER 13-04-628-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

JOSE ADRIAN MONDRAGON GONZALES,                    Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 

 

 

                   On appeal from the 24th District Court

                            of Goliad
County, Texas.

 

 

 

                     MEMORANDUM OPINION [1]

 

        Before Chief Justice Valdez and Justices Rodriguez
and Castillo

                        Memorandum Opinion by Justice Castillo

 








A jury convicted
appellant, Jose Adrian Mondragon-Gonzales, of aggravated assault of a public
servant with a deadly weapon and assessed punishment at sixty years'
imprisonment in the Texas Department of Criminal Justice-Institutional Division
and a $10,000.00 fine.[2]  By four issues, Mondragon complains of the
factual sufficiency of the evidence and improper jury argument.[3]  We affirm.

I.  RELEVANT FACTS

Mondragon was arrested
when the vehicle he was driving was stopped by police officers after being
identified as the same vehicle that had run through a marked, officer-controlled
accident scene earlier that day.  The
driver of the vehicle had attempted to hit one of the officers who was
investigating the accident scene.

At the trial, one of
the officers on duty at the time of the arrest testified that there were undocumented
immigrants in the same vehicle as Mondragon when he was arrested.  In closing arguments, the State indicated
that "there was other evidence of which he was aware which was not
presented to the jury," and "the true reason that the case was being
tried and the true 'serious business in this case is the punishment.'" 

 








II.  PRESERVATION OF ERROR

A.  The Requirement of a Timely Objection

As a prerequisite to
presenting a complaint for appellate review, the record must show that:

(1) the complaint was
made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds
for the ruling that the complaining party sought from the trial court with
sufficient specificity to make the trial court aware of the complaint, unless
the specific grounds were apparent from the context; and(B) complied with the
requirements of the Texas Rules of Civil or Criminal Evidence or the Texas
Rules of Civil or Appellate Procedure; and

(2) the trial
court:(A) ruled on the request, objection, or motion, either expressly or
implicitly; or(B) refused to rule on the request, objection, or motion, and the
complaining party objected to the refusal.[4]

 

Once the trial court
has ruled on the objection and the party has preserved error, we review for
abuse of discretion, which occurs only when the trial court's decision is so
wrong as to lie outside that zone within which reasonable persons might
disagree.  Montgomery v. State,
810 S.W.2d 372, 379-80 ( Tex. Crim. App. 1990).

B.  Prosecutor's Actions Relating to the Arrest








By his first issue,
Mondragon complains that the State (1) made improper statements during closing
argument, concerning allegations of transportation of undocumented immigrants
at the time of his arrest; (2) presented evidence that undocumented immigrants
were present in the same vehicle at the time Mondragon was apprehended; and (3)
elicited testimony from Captain Schaefer that Mondragon was involved with the
trafficking of undocumented aliens.

The complaining party
must make a specific objection and obtain a ruling on the objection.  Wilson v. State, 71 S.W.3d 346, 349
(Tex. Crim. App. 2002); Broxton v. State, 909 S.W.2d 912, 918 (Tex.
Crim. App. 1995).  The record must show
that the complaining party gave the trial court an opportunity to rule on the
complaint by presenting that complaint to the trial court in a specific and
timely objection.  Tex. R. App. P. 33.1(a); Geuder v.
State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); Martinez v. State,
98 S.W.3d 189, 193 (Tex. Crim. App. 2003). 
The objection must be made at the earliest possible opportunity.  Wilson v. State, 71 S.W.3d at
349;  Turner v. State, 805 S.W.2d
423, 431 (Tex. Crim. App. 1991). 
Further, "the law in Texas requires a party to continue to object
each time inadmissible evidence is offered."  Martinez, 98 S.W.3d at 193. 








Any improper jury
argument is waived by a party's failure to object.  See Landry v. State, 706 S.W.2d 105,
109 (Tex. Crim. App. 1985).  The record
reflects that Mondragon failed to raise an improper jury argument objection at
trial.  Moreover, error is not preserved
if the evidence is admitted elsewhere in the trial without objection.  Chamberlain v. State, 998 S.W.2d 230,
235 (Tex. Crim. App. 1999); Ethington v. State, 819 S.W.2d 854, 858
(Tex. Crim App. 1991).  Therefore, even
if these statements were admitted over a proper and timely objection, they are
harmless if the same evidence is admitted elsewhere without objection and proves
the same fact.  Hammons v. State,
856 S.W.2d 797, 802 (Tex. App.BFort Worth 1993, pet.
ref'd).

Here, the State
introduced evidence that (1) undocumented immigrants were in the same vehicle
as Mondragon when he was apprehended, and (2) Mondragon was involved with the
trafficking of undocumented aliens. 
Mondragon never objected and in failing to do so failed to preserve
error.  Id.[5]  Because Mondragon failed to timely object to
the statements and to other evidence and testimony surrounding his arrest, he
did not preserve error.  See
Martinez, 98 S.W.3d at 193; Landry, 706 S.W.2d at 109.

In his second and
third issues, Mondragon contends that error requiring reversal resulted from
the prosecutor's improper argument which included the comments (1) "there
was other evidence of which he was aware which was not presented to the
jury," and (2) "the true reason that the case was being tried and the
true serious business in this case is the punishment."  The State responds that these statements are
not reversible error.








Any analysis of an
improper jury argument claim centers on preservation of error.  A defendant's "right" to a closing
statement free from incurable erroneous jury arguments will be forfeited if
there is a failure to insist upon it.  Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); Marin v. State,
851 S.W.2d 275, 279 (Tex. Crim. App. 1993). 
Even incurable jury arguments require an objection to preserve the
defendant's right to appeal. Cockrell, 933 S.W.2d at 89 (expressly
overruling prior caselaw that did not require an objection to what had
previously been considered an incurable jury argument).  "Before a defendant will be permitted to
complain on appeal about an erroneous jury argument, . . . he will have to show
he objected and pursued his objection to an adverse ruling."  Id. 
The closing argument of State prosecutor Hyden began as follows:

Prosecutor:  Good Afternoon.  Ladies and gentlemen, you've now heard the
evidence from five of the witnesses we brought before you.  We could have brought many more and they
could have presented this same scenario to you over and over again.

 

Counsel for
Mondragon:  Your Honor, I object to any
characterization of what other witnesses would have said.

 

The Court:  Sustained.

 

After a brief
discussion on the record, the court sustained the objection and additionally
instructed the jury not to consider what other witnesses not presented to the
jury might have said.  Mondragon's
attorney then requested a mistrial, which was denied.  The closing statements of the State continue:








Prosecutor:  In any event, ladies and gentlemen, we called
five of the many witnesses who were out there. 
The judge showed you the verdict form, which would be the last
page.  I submit to you that all of the
evidence demonstrates overwhelmingly and certainly beyond a reasonable doubt
that the defendant did exactly as we've alleged that he did.

Mondragon made no
objection to the new statement that the State "called five of the many
witnesses who were out there," essentially reiterating that "there
was other evidence of which he was aware which was not presented to the
jury."  Mondragon failed to preserve
error.  See Martinez, 98 S.W.3d at
193; Cockrell, 933 S.W.2d at 89.

After the closing
arguments of Mondragon's attorney, the prosecutor's rebuttal included the
following:

Prosecutor:  The serious business in this case is the
punishment, is what is going to happen in punishment.  You have yet to hear any evidence in that regard
and it's not the time to argue . . .

 

Mondragon's
counsel:  Your Honor, I have to object,
to assume that there will be a guilty verdict in this case.  

 

Prosecutor:  Judge, it's a legitimate argument to state
that guilt is not a 

difficult issue.

 

Mondragon's
counsel:  Judge, that invades the
province of the jury.

 

The Court:  It's argument and I'll overrule you.

 

No further objection
was made by Mondragon, and he did not request an instruction be given to the
jury.  He did not preserve error.  Because Mondragon failed to preserve error,
we overrule Mondragon's first, second, and third issues.

III.  FACTUAL SUFFICIENCY

In his fourth issue,
Mondragon contends that the facts were insufficient to sustain the
conviction.  The State responds that
there were sufficient facts. 








A.  Standard and Scope of Review

In a factual
sufficiency review, we view all the evidence in a neutral light, both for and
against the finding, and set aside the verdict if "proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof." Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex.
Crim. App. 2005) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000); see Zuliani v. State, 97 S.W.3d 589, 593‑94
(Tex. Crim. App. 2003)).  In determining
the factual sufficiency of the elements of the offense, we view all the
evidence neutrally, not through the prism of "the light most favorable to
the prosecution."  Johnson,
23 S.W.3d at 6‑7 (citing Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996)).  In conducting
our review, we consider all of the evidence weighed by the jury, comparing the
evidence which tends to prove the existence of the elemental fact in dispute to
the evidence which tends to disprove it. 
Id.  We are authorized to
disagree with the jury's determination even if probative evidence exists which
supports the verdict, but we must avoid substituting our judgment for that of
the fact‑finder.  Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  

B.  A Hypothetically Correct Jury Charge








This Court measures
the factual sufficiency of the evidence against a hypothetically correct jury
charge.  Malik v. State, 953
S.W.2d 234 (Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131
(Tex. App.BCorpus Christi 2002,
pet. ref'd).  We use this analytical tool
to determine whether there is a fact issue at all.  Clewis, 922 S.W.2d at 133.

1. The Indictment

The indictment stated
in pertinent part:  

On or about February
17, 2004, Mondragon did intentionally and knowingly and recklessly (1) use a
deadly weapon, to-wit:  an automobile,
that in its manner and its use and intended use, was capable of causing death
and serious bodily injury, (2) threaten Casillas with imminent bodily injury by
the use of said deadly weapon, (3) knew that Casillas was a public servant, to
wit: a peace officer, and (4) that said offense was committed while Casillas
was lawfully discharging an official duty, to wit: investigating an automobile
accident.

 

2. The Elements and
their Definitions as Limited by the Indictment

In determining whether
an accused committed aggravated assault upon a public servant with a deadly
weapon, a fact-finder must find that Mondragon (1) intentionally, (2) and
knowingly, (3) used a deadly weapon, (4) against Casillas, (5) whom Mondragon
knew was a public servant, (6) while Casillas was discharging an official
duty.  See Tex. Pen. Code Ann. _ 22.02(b)(2)(B)
(Vernon Supp. 2005).  A person commits
aggravated assault by (1) committing assault as defined in section 22.01 of the
Texas penal code,[6]
and (2) causing serious bodily injury or using or exhibiting a deadly weapon
during commission of the assault.  Id.
' 22.02(a)(1), (2); Green
v. State, 831 S.W.2d 89, 93 (Tex. App.BCorpus Christi 1992,
no pet.).








An act is committed
intentionally when it is the actor's conscious objective or desire to engage in
the conduct.  Tex. Pen. Code Ann. ' 6.03(a) (Vernon
2003).  Intent may be inferred from acts,
words and conduct of accused.  Hernandez v. State, 819 S.W.2d 806, 810
(Tex. Crim. App. 1991) (en banc); Mouton v. State, 923 S.W.2d 219, 223
(Tex. App.BHouston [14th Dist.]
1996, no pet.).  A person acts knowingly
when he knows that the conduct is reasonably certain to cause the result.  Tex.
Pen. Code Ann. ' 6.03(b) (Vernon
2003).

The Texas penal code
defines deadly weapon as anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury, or anything that in the
manner of its use or intended use is capable of causing death or serious bodily
injury.  Tex. Pen. Code Ann. _ 1.07(a)(17) (Vernon
Supp. 2005). 

Section 1.07(41) of
the Texas penal code defines a public servant to include a person elected,
selected, appointed, employed, or otherwise designated as an officer, employee,
or agent of government.  Tex. Pen. Code Ann. ' 1.07(41) (Vernon
Supp. 2005).  Although "official
duty" is not defined in the Texas penal code, its ordinary, common and
familiar meaning is an (1) obligatory conduct or service, (2) done by an
officer in his official capacity under color or virtue of his office. 
Black's Law Dictionary 978 (7th ed. 1999).  Thus, conviction was authorized under the
evidence in this case if a rational jury could find that Mondragon
intentionally and knowingly drove a vehicle at Casillas, with the knowledge
that Casillas was a public servant discharging an official duty at the
time.  Tex.
Pen. Code Ann. _ 22.02(b)(2)(B) (Vernon Supp. 2005)

 








3. Measuring the
Evidence against the Hypothetically Correct Jury Charge

In evaluating
Mondragon's argument of insufficiency of the evidence, we "show our
work."   Tex. R. App. P. 47.1; Sims
v. State, 99 S.W.3d 600, 604 (Tex. Crim. App. 2003).  The record reflects that Mondragon knew
officers were stopping oncoming traffic, and he disregarded their instructions
to yield.  He first stopped with the
other traffic on the road, but then, without permission to proceed, he rapidly
moved forward and drove through the officers who were directing traffic.  Casillas testified that Mondragon looked
directly at him and after seeing him, knowingly and intentionally drove his vehicle
straight at Casillas such that Casillas feared for his safety.  Casillas testified that if he had not run
from the vehicle, he would have been hit. 
Casillas was in uniform, and there is no dispute that he was an officer
on the scene investigating the accident. 









An automobile is not a
deadly weapon per se.  Parrish v.
State, 647 S.W.2d 8, 10 (Tex. App.BHouston [14th Dist.]
1982, no pet.).  However, pursuant to the
penal code, it may become a deadly weapon if "in the manner of its use or
intended use [it] is capable of causing death or serious bodily
injury."  Tex. Pen. Code Ann. _ 1.07(a)(17) (Vernon
Supp. 2005); Morgan v. State, 775 S.W.2d 403, 406 (Tex. App.BHouston [14th Dist.]
1989, no pet.) (finding that the car on which a person hung while the driver
attempted to throw him off by alternately accelerating to high speeds and then
braking became a deadly weapon based on the manner of its use); Roberts v.
State, 766 S.W.2d 578, 579 (Tex. App.BAustin 1989, no pet.)
(finding that truck recklessly driven into an intersection at 80 to 100 miles
per hour, and colliding with a car stopped at a red light, became a deadly
weapon based on the manner of its use); Parrish v. State, 647 S.W.2d at
9-10 (finding that the car that pulled into a driveway, crushing the
pedestrian's legs between it and another car, became a deadly weapon based on
the manner of its use).  If an actor uses
or intends to use an object in such a way that the object is capable of causing
death or serious bodily injury, it is a deadly weapon.  Adame v. State, 69 S.W.3d 581, 584
(Tex. Crim. App. 2002) (Meyers, J., concurring).

In the present case,
evidence shows that Mondragon accelerated the automobile toward Casillas in a
threatening manner, causing Casillas to believe that he had to run to avoid
being hit.  Although Casillas was not
actually hit by the car, wounds need not be inflicted before an automobile is
declared to be a deadly weapon.  Parrish,
647 S.W.2d at 11.  We conclude that
evidence showing that an automobile has been used in such a threatening manner
is sufficient to show that the automobile was used in a manner capable of
causing death or serious bodily injury.  Id.  Thus, the evidence is sufficient to show that
the automobile was a deadly weapon in the manner of its use or intended
use.  Tex.
Pen. Code Ann. _ 1.07(a)(17) (Vernon Supp. 2005).








Viewing all the evidence
neutrally, favoring neither the prosecution nor Mondragon, we conclude that
proof of Mondragon's guilt of aggravated assault of a public servant with a
deadly weapon is not so obviously weak as to undermine confidence in the jury's
determination.  See Zuliani, 97
S.W.3d at 593-94.  We overrule
Mondragon's fourth issue.

IV. CONCLUSION

Having overruled all
of Mondragon's issues, we affirm the trial court's verdict.

ERRLINDA CASTILLO

Justice

Do not publish

Tex. R. App. P.
47.2(b).

 

Memorandum Opinion delivered and filed

this the 11th day of May, 2006.                                                                      











[1] See Tex.
R. App. P. 47.1, 47.4.  





[2] Tex.
Pen. Code Ann. _ 22.02(b)(2)(B) (Vernon Supp.
2005).





[3] In his first issue, Mondragon
requests a new punishment hearing because (1) the State improperly argued that
Mondragon should be punished for the federal offense of illegal transportation
of undocumented immigrants and for being its kingpin, and (2) this extremely
prejudiced the jury, resulting in the rejection of Mondragon's probation
application and the rendering of a sixty-year term of imprisonment.  In his second and third issues, Mondragon
complains that the prosecutor improperly argued that (1) "there was other
evidence of which he was aware which was not presented to the jury," and
(2) "the true reason that the case was being tried and the true 'serious
business in this case is the punishment'." 
In his fourth issue, Mondragon maintains that the evidence was factually
insufficient to sustain the conviction.

 





[4] Tex.
R. App. P. 33.1(a).





[5] No rule 404(b) objections were
raised.  Texas Rules of Evidence 404(b)
provides that evidence of other crimes, wrongs, or acts is not admissible to
prove the character of a person in order to show action in conformity
therewith.  Tex. R. Evid. 404(b); see Hernandez
v. State, 176 S.W.3d 821, 822 (Tex. Crim. App. 2005).  That evidence may, however, be admissible for
other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident, provided that
upon timely request by the accused in a criminal case, reasonable notice is
given in advance of trial of intent to introduce in the State's case-in-chief
such evidence other than that arising in the same transaction.  Id. 

 

Rule 403 of the Texas
Rules of Evidence also provides that relevant evidence may be excluded if its
probative value does not outweigh its prejudicial impact.  Tex.
R. Evid. 403.  Here, Mondragon
raised no objections to the direct testimony of Captain Schaefer.  In fact, it was Mondragon's own attorney that
coined the term "kingpin" when, in his closing argument, he referred
to Mondragon and the events surrounding the arrest.





[6] Tex.
Pen. Code Ann. _ 22.01 (Vernon Supp. 2005).