Opinion issued April 8, 2010

                                                                        

 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00385-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



KEVIN JONATHAN DOMINIQUE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 239th District Court

Brazoria County, Texas

Trial Court Cause No. 57491

 

 



MEMORANDUM OPINION

          A
jury convicted Kevin Jonathan Dominique of aggravated assault on a public
servant and assessed punishment at seven years’ confinement and a $5000
fine.  Tex.
Penal Code Ann. § 22.02(b)(2) (Vernon
Supp. 2009).  On appeal, Dominique
contends that the State:  (1) failed to
present legally and factually sufficient evidence that Dominique acted
intentionally or knowingly; and (2) failed to present legally and factually
sufficient evidence that Dominique threatened Officer Brian Hoskins.  We hold that legally and factually sufficient
evidence supports the conviction and therefore affirm.

Background

In May 2008, Christy Nickerson was
gardening in the flowerbeds of her front yard when Dominique turned a car into
her driveway and garage.  Nickerson did
not know Dominique, and she and her neighbors called the police.  Dominique pulled in and out of her garage
several times, at one point hitting a fence that stood between Nickerson and
her neighbor’s property.  Dominique then
drove off down the street.  Nickerson and
her neighbors gave Dominique’s license plate number to the police.

Shortly after Dominique drove away
from Nickerson’s house, Carol and Jerry Albright, who were driving down Velasco
Road to Angleton, heard a broadcast of the incident over their police
scanner.  The Albrights recognized
Dominique’s car from the description given on the scanner, and they followed
Dominique, who was driving erratically, for about twelve minutes, driving through
the parking lot of a Wal-Mart and on the streets surrounding the Wal-Mart.  Carol called the police to notify them of
Dominique’s current location.  When the
police arrived, a chase ensued.  Dominique
“spun out” while pulling out of the parking lot and onto Tigner Road and ended
up facing the police officers.  Dominique
then put the car in reverse, quickly drove down Tigner, stopped at a cattle
guard gate, and then backed into the gate several times before knocking it
down.

Dominique drove in reverse into a
heavily wooded area immediately beyond the gate; four officers followed the car
on foot.  Inside the wooded area,
Dominique ended up in a small clearing and began driving back and forth,
straight at the officers, while revving his engine in an attempt to escape from
the clearing.  According to Sergeant
Gentry, Dominique was “running in reverse, going forward, going
just like a ping-pong machine.” 
Dominique ignored the officers’ commands to stop and turn off the car,
and instead “tried to run [the officers] over” by driving in reverse toward the
officers who stood at the entrance to the clearing.  The officers then shot at Dominique’s wheels
in an attempt to stop the car.  When Dominique
almost hit the officers a second time, Sergeant Gentry shot the rear left tire as
well as the driver’s side window, because it appeared that Dominique did not
intend to stop the car.

Ultimately, Dominique attempted to
reverse out of the trees, but the tires could not gain traction and merely spun
in place.  Officer Hoskins and Officer
Lares then broke the driver’s side window with a police baton, and Hoskins
reached inside to turn off the car.  Dominique
screamed at the officers, wondering why they were trying to hurt him.  He hit Hoskins with his elbow several times to
get him out of the way.  Shortly after
Dominique began struggling with Hoskins, Dominique again put the car in
reverse.  Dominique drove backwards for
about five to eight feet with Hoskins hanging half out of the window until
another officer pulled him free.[1]  Hoskins testified that he tried to get out of
the window before Sergeant Mitchell pulled him out, but noticed that the front
wheel was turned, and “if [Hoskins had] stepped down, [the wheel] would have
run over [him].”  Dominique then reversed
into another tree, drove forward out of the clearing, crashed into a nearby
ditch, and ran from the car.

Sergeant Gentry testified that, when
Dominique drove in reverse in his direction, he thought “[Dominique] was going
to kill [him]” and he was in fear for his life and concerned about being
seriously injured.  Hoskins stated that
while Dominique was driving in reverse with him hanging out of the window, he
“[f]elt like [he] was probably fixing to die right there” because he did not
know if he could get far enough away from the vehicle without Dominique running
over him.  Sergeant Mitchell testified
that Hoskins could have suffered serious bodily injury or death because he was
“trapped inside a moving vehicle without any control over the vehicle, half of
his body out, half of his body in.  [And Dominique
had] already smashed into several trees with his vehicle.”  Mitchell observed that Dominique was backing
up towards a large tree, and if “[Dominique] had continued in that path with
Officer Hoskins inside the vehicle, Officer Hoskins would have been pinned up
against the tree or—or smashed against the tree.”  Hoskins also testified that he was placed in
danger after he was pulled from the window and Dominique was driving forward out
of the clearing.  According to Hoskins,
had he and Sergeant Mitchell not jumped out of the way of Dominique’s car,
Dominique would have run over them.

Discussion

Standard of Review

          Dominique
contends that the State failed to present legally and factually sufficient
evidence that he (1) acted intentionally or knowingly, and (2) threatened
Officer Hoskins.  In a legal sufficiency
review, we view the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Salinas v. State, 163 S.W.3d
734, 737 (Tex. Crim. App. 2005). 
The fact-finder is the sole judge of the weight and credibility of the
evidence.  Margraves v. State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000), overruled on
other grounds by Laster v. State, 275 S.W.3d 512 (Tex. Crim. App. 2009).  The fact-finder may choose to believe a
witness even if contradictory evidence is introduced, and may believe some or
all of a witness’s testimony.  See Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
We may not reevaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1990).  We resolve any inconsistencies in the
evidence in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex.
Crim. App. 2000).

          In
a factual sufficiency review, we view all of the evidence in a neutral light
and we only set aside the verdict if the evidence, though legally sufficient,
is so obviously weak that the verdict is (1) “clearly wrong and manifestly
unjust” or (2) against the great weight and preponderance of the evidence.  Watson
v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006) (quoting Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000)).  We cannot decide that
the verdict is “clearly wrong or manifestly unjust” just because, based on the
quantum of evidence presented, we would have voted to acquit had we been on the
jury.  See id. at 417.  To remand on factual insufficiency grounds,
the record must contain an objective basis that the great weight and
preponderance of the evidence contradicts the verdict.  See id.  The jury is in the best position to evaluate
the credibility of the witnesses, and thus we defer to the jury’s
determinations.  Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006).  In a
factual sufficiency review, we must discuss the evidence that, according to the
appellant, best supports his claim and undermines the verdict.  Sims v. State, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003).

Intentionally or Knowingly

          A
person commits the first degree felony offense of aggravated assault on a
public servant if he (1) intentionally or knowingly threatens imminent bodily
injury, (2) to a person he knows is a public servant, (3) while the public
servant is lawfully discharging an official duty, and (4) uses or exhibits a
deadly weapon during the assault.  Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2), 22.02(b)(2) (Vernon Supp. 2009).  A person acts intentionally “with respect to
the nature of his conduct or to a result of his conduct when it is his
conscious objective or desire to engage in the conduct or cause the result.”  Id. § 6.03(a) (Vernon 2003).  A person acts knowingly “with respect to his
conduct or to circumstances surrounding his conduct when he is aware of the
nature of his conduct or that the circumstances exist,” or if he “is aware that
his conduct is reasonably certain to cause the result.”  Id. § 6.03(b). 
Intent or knowledge is a fact question to be determined from the
totality of the circumstances.  Smith v. State, 965 S.W.2d 509, 518 (Tex.
Crim. App. 1998); Dobbins v. State,
228 S.W.3d 761, 764 (Tex. App.—Houston [14th Dist.] 2007, pet. dism’d).  Dominique does not challenge the jury’s
finding that his car was a deadly weapon.

          Dominique
contends that the State failed to present legally and factually sufficient
evidence that he acted intentionally or knowingly, because the State did not
present any evidence that Dominique used threatening language or made
threatening gestures.  However, the law
does not require evidence of threatening language or gestures to prove
knowledge or intent.  Dobbins, 228 S.W.3d at
765.  Rather, a jury may infer the
existence of knowledge or intent from “any facts tending to prove its
existence,” such as the defendant’s acts, words, and conduct.  Id.  Here, we conclude that the surrounding
circumstances provide sufficient evidence of intent.

Dominique concedes that his conduct
was reckless, but he contends that the evidence supports the inferences
that:  (1) Dominique’s only desire after
his car got stuck in the trees was to get out of the clearing and away from
police, and (2) he was reasonably certain that if he kept accelerating and
shifting gears, he would get the car moving again.  Additionally, he observes that Hoskins was
the one who decided to “dive into” Dominique’s vehicle, and he did so knowing
that Dominique was trying to get the car moving.

Dominique focuses only on the
incident in which Hoskins was dragged several feet backwards while hanging half
out of Dominique’s window.  Dominique
does not address the events that happened immediately after Sergeant Mitchell
pulled Hoskins from the window: 
Dominique reversed into a tree, looked “straight ahead” at Hoskins, who
was standing in front of the car, and started driving forward to leave the
clearing.  Hoskins testified that, on
both of these occasions, Dominique’s actions placed him in imminent danger of
injury.  The jury reasonably could have
inferred that Dominique’s conduct was intentional based on his repeated
attempts to run down the police officers who stood in his way.

The facts here are similar to those
in cases decided by our sister courts, in which they concluded that the
evidence sufficiently proved intent.  In Dobbins, the Fourteenth Court of Appeals
held that Dobbins acted intentionally or knowingly by driving at Officer Vest,
stopping in front of Vest at his command, and then moving forward again as Vest
started to walk toward the driver’s side window, hitting Vest and lifting him
onto the hood of the car.  Dobbins, 228 S.W.3d at
765.  In reaching this holding,
our sister court considered Dobbins’s conduct after his car first contacted
Vest:  Dobbins continued to drive with
Vest on the hood long enough for Vest to pull his gun, yell at Dobbins to stop,
and call for assistance, and, after stopping the car a second time, Dobbins
left the scene.  See id.

Similarly, in Sneed v. State, the
Dallas Court of Appeals held that sufficient evidence existed to support a
finding that Sneed acted knowingly when: 
(1) Sneed was aware that two officers were partially inside the vehicle,
(2) Sneed physically struggled with one officer who was attempting to grab the
car keys, (3) Sneed looked directly at the other officer and pinned her arm
under his, and (4) Sneed drove away fast enough to leave tire marks on the
pavement.  803 S.W.2d
833, 837 (Tex. App.—Dallas 1991, pet. ref’d).  The Dallas Court rejected Sneed’s contention
that, when he sped away, he only intended to escape the police and did not
intend to injure the officers, and therefore the evidence was insufficient to
prove intentionally or knowingly.  Id. (“Knowledge of the probable result
is sufficient.  If Sneed intended only to
escape but was aware that flooring the accelerator while [Officers] Heard and
Swinney leaned inside the Blazer was reasonably certain to cause them bodily
injury, the offense was complete.”).  The
Fort Worth Court of Appeals reached the same conclusion in Cole v. State, when Cole “was aware [that Officers] Vanover and
Gilliland were partially inside his automobile when he chose to drive off at a
high rate of speed.”  46
S.W.3d 427, 431 (Tex. App.—Fort Worth 2001, pet. ref’d).  Although the State presented no evidence that
Cole intended to injure the officers, sufficient evidence supported the finding
that Cole knew that “speeding off with the two officers hanging out of his
vehicle and later attempting to shove them from the vehicle was reasonably
certain to cause bodily injury.”  Id.

Here, each of the officers testified
that Lares broke Dominique’s driver’s side window with his baton and Hoskins
reached inside to attempt to turn off the car. 
Hoskins testified that Dominique was screaming and yelling, and hit
Hoskins with his elbows as he tried to prevent Hoskins from turning off the
car.  Although the car was stopped in a
group of trees when Hoskins first reached inside, Dominique put the car in
reverse and began moving backwards while Hoskins was still half inside the
car.  Sergeant Gentry testified that
Dominique dragged Hoskins backwards for approximately five to eight feet before
Sergeant Mitchell pulled Hoskins free from the window.  After Dominique reversed into a tree, Hoskins
stated that Dominique looked straight forward at Hoskins, who was standing in
front of the car, and began driving forward. 
According to Hoskins, he “kind of dove” to the side to avoid being hit
by Dominique’s car, and although Hoskins could not tell how closely the car
passed beside him, he could feel “[t]he heat off the engine” as Dominique drove
by.  Viewing the evidence in the light
most favorable to the verdict, we hold that a rational trier of fact could have
found beyond a reasonable doubt that Dominique acted intentionally or knowingly
when he dragged Hoskins backwards and then drove straight toward him in an
effort to leave the clearing.

Dominique points out that Sergeant
Gentry testified that he did not see Dominique attempt to run over Officer
Hoskins.  Hoskins, however, testified in
detail about what happened after Sergeant Mitchell pulled him from the window,
including Dominique’s attempts to run over them.  Dominique also points to testimony from
Officers Hoskins and Lares that he was driving in an erratic and reckless
manner, and testimony from Sergeant Gentry, who opined that Dominique was
trying to escape from the officers and get out of the clearing, as evidence
that contradicts the jury’s determination that Dominique acted intentionally or
knowingly.  The Dallas Court of Appeals
and the Fourteenth Court of Appeals rejected similar contentions in Sneed and Dobbins, respectively.  See Sneed, 803 S.W.2d at 837; Dobbins, 228 S.W.3d at
765.  The Dallas Court noted that
even if the jury believed Sneed’s contention that he only intended to escape
and did not intend to injure the officers, the evidence still supported a
finding that Sneed acted knowingly, which was sufficient to satisfy the
culpability requirement.  Sneed, 803 S.W.2d at
837.  Similarly, Dobbins’s
contention that the evidence showed “at most . . . his
desire to leave the parking lot and his recklessness or negligence in doing so”
did not persuade the Fourteenth Court, and it held that the evidence
“support[ed] the conclusion that [Dobbins] saw [Officer] Vest in front of the
vehicle and intentionally or knowingly drove the vehicle into him.”  Dobbins,
228 S.W.3d at 765.

Sergeant Gentry’s testimony
that he thought that Dominique was simply trying to get away from the officers
and out of the clearing does not preclude a determination that, in attempting
to escape, Dominique also intentionally or knowingly threatened Officer
Hoskins.  A reasonable jury could choose to believe
that, even if Dominique’s primary motivation was to escape the clearing, he
acted intentionally or knowingly when he dragged Hoskins backwards and then
drove straight toward him and Sergeant Mitchell.  Viewing all of the evidence in a neutral
light, we hold that factually sufficient evidence exists to support the finding
that Dominique acted intentionally or knowingly.

Threat

          Dominique
further contends that the State failed to present legally and factually
sufficient evidence that Dominique threatened Officer Hoskins.  The gist of an assault offense is that the
defendant “acts with intent to cause a reasonable apprehension of imminent
bodily injury.”  Dobbins, 228 S.W.3d at 766 (citing Garrett v. State, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981)).  Threats are not limited to verbal statements,
but may also be communicated by action or conduct.  Id.
(citing McGowan v. State, 664 S.W.2d
355, 357 (Tex. Crim. App. 1984)).  The
Court of Criminal Appeals has not “definitively resolve[d]” the question of
whether the victim must perceive the threat to establish assault by
threat.  Olivas v. State, 203 S.W.3d 341, 349
(Tex. Crim. App. 2006); Dobbins, 228
S.W.3d at 766 n.6.  The Court observed,
however, that a perception of “some threat of imminent bodily injury,” coupled
with the use of a deadly weapon supports a conviction for aggravated assault.  Olivas,
203 S.W.3d at 350; Dobbins,
228 S.W.3d at 766.

          In
Dobbins, the Fourteenth Court held
that sufficient evidence existed to support a finding that Dobbins threatened
Officer Vest.  Dobbins, 228 S.W.3d at 767.  Dobbins drove the vehicle directly at Vest,
stopped only when Vest commanded him to stop, and then started to drive forward
again after Vest began walking to the driver’s side of the car, hitting
him.  Id. at 766.  Vest testified that he felt “very threatened”
when Dobbins began driving toward him the second time, and the Fourteenth Court
concluded that Vest’s testimony “clearly demonstrates that [Dobbins’] conduct
in driving the vehicle at Vest communicated a threat and that Vest perceived
that threat.”  Id. at 766–67.  The Waco Court of Appeals also held that
sufficient evidence of a threat exists when a defendant accelerates toward a
person who attempts to dodge the car.  See St. Clair v. State, 26 S.W.3d 89, 97
(Tex. App.—Waco 2000, pet. ref’d); see
also Green v. State, 831 S.W.2d 89, 93 (Tex. App.—Corpus Christi 1992, no
pet.) (“With regard to the car, Green’s sudden acceleration toward Cardoza in
an open parking lot forcing him to run inside the store is sufficient to show
that Green intentionally threatened Cardoza with imminent bodily injury by use
of a motor vehicle.”).

Here, Dominique placed the car in
reverse and drove backwards with Officer Hoskins hanging half out of the
driver’s side window, and later looked straight at Hoskins and Mitchell in
front of the car and drove forward. 
Hoskins had to “leap” out of the way of Dominique’s car, and the car
passed close enough to Hoskins that he could feel “[t]he heat off the
engine.”  Hoskins testified that he felt
like Dominique was trying to run him over and was concerned for his safety; he
“felt like [he] was probably fixing to die right there” while Dominique was
dragging him with the car in reverse.  Viewing
the evidence in the light most favorable to the verdict, we hold that a
rational jury could find beyond a reasonable doubt that Dominique intended to
place Hoskins in apprehension of imminent bodily injury, and therefore the
evidence is legally sufficient to support the jury’s verdict that Dominique
threatened Hoskins.

Dominique contends that Hoskins’s
testimony regarding what Dominique said while Hoskins was partially inside his
vehicle indicates “that it was, in fact, [Dominique] who felt threatened.”  Hoskins testified that, when he tried to turn
off Dominique’s car, Dominique screamed “why are you-all trying to hurt me, why
are you-all trying to hurt me[?]”  Testimony that suggests that Dominique felt
threatened by the officers’ presence does not contradict Hoskins’s later
testimony that he was concerned for his safety as a result of Dominique’s
conduct.  Viewing all of the evidence in
a neutral light, we conclude that the evidence supports the jury’s conclusion that
Hoskins perceived a threat and that Dominique intended to place Hoskins in
apprehension of imminent bodily injury by dragging him backwards and then
accelerating towards him.  We therefore
hold that factually sufficient evidence exists to support the jury’s
determination that Dominique threatened Officer Hoskins.

Conclusion

We hold that legally and factually
evidence exists to support the jury’s conviction.  We therefore affirm the judgment of the trial
court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Jennings,
Hanks, and Bland.

Do Not Publish.  Tex. R. App. P. 47.2(b).











[1] Sergeant Gentry testified that Officer Lares pulled
Officer Hoskins from the vehicle, however, both
Hoskins and Sergeant Mitchell testified that Mitchell was the one who pulled
Hoskins free.